[Cite as *State v. Birt*, 2013-Ohio-1379.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO.  CA2012-02-031 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 4/8/2013 |
| - vs - | | |
| | : | |
| JERRY BIRT, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2011-03-0417


Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Brian A. Smith, 503 West Park Avenue, Barberton, Ohio 44203, for defendant-appellant


**S. POWELL, J.**

{¶ 1}   Defendant-appellant, Jerry Birt, appeals his convictions and sentences in the Butler County Court of Common Pleas for five counts of rape, one count of attempted rape, one count of intimidation of a witness, and one count of reckless operation.  For the reasons set forth below, we affirm each conviction and sentence for rape, attempted rape, and reckless operation, however, the conviction and sentence for intimidation of a witness is reversed and vacated.

{¶ 2}   Between 2005 and March 6, 2011, Birt sexually abused his biological daughter, T.G., who was about 8 or 9 years old when the abuse began.   The abuse occurred over a period of years and at multiple residences, including a home in Germantown, Ohio, an apartment in Germantown, Ohio, and a house in Middletown, Ohio.   The abuse ended on March 6, 2011, when a houseguest, Michael Morningstar, observed T.G. lying in Birt's bed with Birt standing in front of her with his pants down and his penis exposed.

{¶ 3}   T.G. later confirmed what Morningstar had seen to her stepmother, Carrie Gehlauf.   The police were eventually dispatched to the Birt home in Middletown, Ohio. During the interview with the officers, T.G. indicated that this was not the first time this type of abuse had occurred.   At trial, T.G. explained that from 2005 until March 6, 2011, Birt forced her to perform fellatio and would engage in both anal and vaginal intercourse with her.   She stated that this occurred on a weekly basis and usually occurred when Gehlauf was working.  While the officers were conducting their investigation, Birt was heard squealing his tires while driving around the block.   Morningstar ran to the officers claiming that Birt was attempting to hit him with his car.   When Birt stopped and exited the vehicle, Officer Kristie Hughes of the Middletown Police Department, ordered him to the ground.   Officer Hughes noticed a strong odor of alcohol coming from Birt.   Birt was subsequently arrested.

{¶ 4}   On March 7, 2011, Gehlauf took T.G. to Cincinnati Children's Hospital where she was evaluated by Dr. Stephen Warrick and a rape kit was collected by Elizabeth Stenger, R.N.   The rape kit was later analyzed by Steven M. Wiechman, a forensic scientist with the Miami Valley Regional Crime Lab.

{¶ 5}   Based on these events, Birt was indicted on five counts of rape, in violation of R.C. 2907.02(A)(1)(b), (Counts 1, 3-6); one count of attempted rape, in violation of R.C. 2923.02 and 2907.02(A)(1)(b), (Count 2); one count each of intimidation of a witness, in violation of R.C. 2921.04(B), (Count 7); operating a vehicle while under the influence, in

- 2 -

violation of R.C. 4511.19(A)(1)(a), (Count 8); and reckless operation, in violation of R.C. 4511.20, (Count 9). Counts 1, 3-6 alleged that Birt engaged in sexual conduct with T.G., while she was under the age of 13, as an ongoing and continuing course of conduct during a specific time period. The time periods included: 2005 through 2006 (Count 1), March 2008 through December 2008 (Count 3), 2009 (Count 4), 2010 (Count 5), and March 6, 2011 (Count 6). Count 2 alleged that Birt committed attempted rape as an ongoing and continuing course of conduct in 2005 through 2008. Counts 1 and 2 were alleged to have occurred in Montgomery County and the remaining counts allegedly occurred in Butler County.

{¶ 6} Prior to trial, Birt filed a motion, requesting the trial court to "remedy the duplicitous nature of the indictment * * * by severing the multiple criminal acts into separate counts." The trial court held a hearing on the motion. After considering the arguments by both the state and Birt, the trial court denied Birt's motion. Birt also orally renewed this motion prior to the start of trial. At this time, Birt's counsel indicated that he believed there was not only a duplicitous indictment but also duplicitous charging. The trial court again denied the motion.

{¶ 7} After a three-day trial, a jury found Birt guilty of each count of rape, attempted rape, intimidation of a witness, and reckless operation. The jury, however, found him not guilty as to the OVI charge. The jury also made a finding that T.G. was under the age of ten as to Count 1. The court sentenced Birt to an aggregate term of 43 years to life in prison, which included: 10 years to life in prison as to Counts 1, 3, 5, and 6, all to be served consecutively, 36 months as to Count 7 to be served consecutive to Counts 1, 3, 5, and 6, 8 years as to Count 2 to be served concurrent with Count 1, and 10 years to life in prison as to Count 4 to be served concurrent with Count 1. As to Count 9, the court imposed a $100 fine. From these convictions and sentences, Birt timely appeals, asserting six assignments of error.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DENYING THE APPELLANT'S MOTION TO REMEDY THE DUPLICITOUS INDICTMENT AND CHARGES AGAINST HIM.

{¶ 10} In his first assignment of error, Birt argues that there was both a duplicitous indictment and duplicitous charging such that several of his constitutional rights were violated. He asserts that the indictment against him was duplicitous in that it charged him with committing "multiple, separate alleged sexual acts under a single count."[1] Birt also contends that duplicitous charging occurred at trial as the state presented evidence of "multiple alleged acts of sexual conduct, spanning approximately six to seven years, two counties, and three separate residences" to prove single counts.

{¶ 11} This court faced these same arguments in *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289 (12th Dist.), *appeal not accepted*, 132 Ohio St.3d 1514, 2012-Ohio-4021. There, the appellant argued that he faced both a duplicitous indictment as "[m]ultiple acts of sexual misconduct were conflated into single counts" and duplicitous charging as the state "introduced evidence of multiple acts of sexual misconduct to prove single counts." *Blankenburg* at ¶ 7. We disagreed and found that the indictment was not duplicitous and that the manner in which the evidence was presented at trial did not prejudice the appellant. *Id.* at ¶ 33.

{¶ 12} In the present case, Birt was indicted and evidence was presented at trial much in the same manner as in *Blankenburg*. For the reasons delineated in *Blankenburg*, we find that the indictment and the manner in which the evidence was presented in this case was not in error. *See Blankenburg* at ¶ 7-33. In reviewing the indictment and the record at trial, we

---

1. Birt only challenged Counts 1 through 5 as duplicitous.

are not convinced that the manner in which Birt was indicted or the evidence that was presented a trial prejudiced him in any way. Birt was charged with one offense per count of rape or attempted rape, as an ongoing course of conduct during a specific and separate time frame for six counts. The record also indicates that both prior to trial and during trial, the state adequately differentiated between the counts of rape such that the indictment sufficiently notified Birt of the charges against him. *See State v. Wagers*, 12th Dist. No. CA2009-06-018, 2010-Ohio-2311, ¶ 14. The amended bill of particulars contained a detailed basis for each count in the indictment. Specifically, the indictment included the time frame and location for each offense and included the type of sexual conduct that occurred. Also, at trial T.G. described the approximate time frame, location, and sexual conduct, including fellatio, vaginal intercourse, and anal intercourse, for each incident as described in the bill of particulars. The trial court properly denied Birt's motion to remedy a duplicitous indictment and charges against him.

{¶ 13} Birt's first assignment of error is overruled.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE APPELLANT'S CONVICTION FOR INTIMIDATION OF A WITNESS WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 16} In his second assignment of error, Birt asserts that his conviction for intimidation of a witness must be reversed as there was insufficient evidence to support the conviction. The state concedes, and we agree.

{¶ 17} When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Dixon*, 12th Dist. No. CA2007-01-012, 2007-Ohio-5189, ¶ 13, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 18} Birt was charged with the intimidation of a witness in violation of R.C. 2921.04(B), based on his conduct towards Morningstar on March 6, 2011.[2] R.C. 2921.04(B) states:

> No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness.

{¶ 19} Birt asserts that there was insufficient evidence to prove the essential element of a witness "involved in a criminal action or proceeding." The Supreme Court recently explained that R.C. 2921.04(B) prohibits the intimidation of a person who observes a crime after the initiation of proceedings flowing from the criminal act in a court of justice. *State v. Davis*, 132 Ohio St.3d 25, 2012-Ohio-1654, ¶ 19. Furthermore, "[a] police investigation of a crime, without more, is not a proceeding in a court of justice, and it does not invoke the protection of R.C. 2921.04(B) for a person who observes the crime." *Id.* As recognized by the Supreme Court in *Davis*, "[t]he General Assembly in R.C. 2921.04(B) could have protected witnesses from intimidation immediately upon their witnessing a criminal act, but it did not." *Davis* at ¶ 17.

{¶ 20} In the present case, Morningstar testified that on March 6, 2011, the same day that he observed Birt engaging in fellatio with T.G., Birt attempted to strike Morningstar with

---

2. We note that effective June 4, 2012, the General Assembly amended R.C. 2921.04 such that the offense now also includes attempts to intimidate a witness regardless of whether an action or proceeding is pending. However, this amendment is not applicable to Birt and our discussion is limited to the prior version of R.C. 2921.04.

his car on two occasions.  Once before the incident was reported to police and once as the police were arriving at Birt's residence.  Morningstar explained that when Birt swerved his car at him a second time, Birt said: "This ain't over.  I'm going to fucking kill you."  The record indicates that the police began their investigation on March 6, 2011, and Birt was not indicted on these charges until April 20, 2011.

{¶ 21} Based on this record, there was insufficient evidence to support Birt's conviction for intimidation of a witness as there was no evidence that Birt intimidated or threatened a "witness involved in a criminal action or proceeding."  Morningstar was a witness to a crime; however, Birt's threats occurred prior to any proceeding in a court of justice.  Although the police had begun their investigation at the time of the second threat, a police investigation does not constitute a proceeding in court of justice.  Rather, the criminal proceeding was initiated later when the state filed charges against Birt.  Therefore, there simply was no pending criminal proceeding at the time the threats were made.  Accordingly, no rational trier of fact could have found the essential elements of R.C. 2921.04(B) were proven beyond a reasonable doubt.

{¶ 22} Birt's second assignment of error is therefore sustained, his conviction for intimidation of a witness is reversed and vacated.  Birt is discharged as it relates to the intimidation of a witness charge.

{¶ 23} Assignment of Error No. 3:

{¶ 24} THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT OVERRULED THE APPELLANT'S MOTION FOR ACQUITTAL UNDER RULE 29 FOR FAILURE TO ESTABLISH EITHER VENUE PER [R.C.] 2901.12(A) AND/OR THE DATES OF THE ALLEGED OFFENSES.

{¶ 25} In this assignment of error, Birt argues that the trial court erred when it denied his Crim.R. 29 motion for acquittal because the state failed to prove venue and the date of

each offense.

**{¶ 26}** When reviewing the trial court's denial of a motion for acquittal under Crim.R. 29, this court applies the same test as it would in reviewing a challenge based upon the sufficiency of the evidence to support a conviction. *State v. Smith*, 12th Dist. Nos. CA2012-02-017 and CA2012-02-018, 2012-Ohio-4644, ¶ 25. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶ 27}** Venue is not a material element of the offense, yet it is a fact that must be proved beyond a reasonable doubt, unless it is waived by the defendant. *Smith* at ¶ 26, citing *State v. Headley*, 61 Ohio St.3d 475, 477 (1983). Pursuant to R.C. 2901.12(A), venue lies in any jurisdiction in which the offense or any element of the offense was committed. R.C. 2901.12 further provides that when an offender commits offenses in different jurisdictions as part of a course of criminal conduct, venue lies for all the offenses in any jurisdiction in which the offender committed one of the offenses or any element of one of those offenses. R.C. 2901.12(H); *see also State v. Hubbard*, 12th Dist. No. CA2006-10-248, 2008-Ohio-3379, ¶ 11. R.C. 2901.12(H) lists prima facie evidence that can be used to establish a course of criminal conduct. Included in this list are offenses that involved the same victim and were committed by the offender in the offender's same relationship to the other person. R.C. 2901.12(H)(1)(2). "[I]t is not essential that the venue of the crime be proved in express terms, provided it be established by all the facts and circumstances, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the affidavit." *State v. Behanan*, 12th Dist. No. CA2009-10-266, 2010-Ohio-4403, ¶ 19, citing *State v. Chintalapalli*, 88 Ohio St.3d 43, 45 (2000).

**{¶ 28}** As to Counts 1 and 2, Birt argues that the state failed to prove that venue was

proper in Montgomery County because there was no testimony of the "address to the apartment in Germantown where the alleged incidents allegedly took place" and therefore the state "could not establish a criminal course of conduct." Birt further contends that the fact that each of the offenses involved the same victim was not enough to establish a course of criminal conduct.

{¶ 29} A review of the record reveals that the facts and circumstances in evidence are sufficient to demonstrate that venue properly lay in both Butler and Montgomery Counties. The victim in this case, T.G., testified that from about the time she was 8 or 9 years old, her father sexually abused her on a weekly basis. This abuse included performing fellatio on him, and vaginal and anal intercourse. Specifically, as to Count 1, T.G. testified that the first time the abuse occurred she and Birt were living in an apartment in Germantown, Ohio. T.G. was unable to give the address of this apartment. T.G.'s stepmother, Gehlauf, corroborated T.G.'s testimony and confirmed that for about two months in 2005, T.G. and Birt lived in an apartment in Germantown, Ohio. Although she too could not recall the address, she testified that the apartment was located in Montgomery County, Ohio. As to Count 2, T.G. testified that while living in a house in Germantown, Birt attempted to rape her one night, but "he didn't do anything because he heard Carrie walking up to go to the bathroom." Gehlauf then provided the address to the house and further testified that it was located in Montgomery County. As to the remaining counts, the testimony indicates that each incident occurred at a home in Middletown, Butler County, Ohio.

{¶ 30} Based on the record, there was sufficient evidence to establish that Birt committed rape and attempted rape in both Butler County and Montgomery County. Furthermore, the record indicates that the rapes and attempted rape were committed as a "course of criminal conduct" as the offenses each involved the same victim, namely T.G., and were committed in the same relationship, father-daughter. *See* R.C. 2901.12(H)(1)(2).

Venue was proper in both Butler and Montgomery Counties. Accordingly, it was not improper for the state to pursue charges against Birt in Butler County. R.C. 2901.12(H).

{¶ 31} Birt also argues within his third assignment of error, that the trial court erred in denying his Crim.R. 29 motion as the state failed to prove the dates of the offenses. He contends that the date of the offenses were critical as he was charged with engaging in sexual conduct with another who was less than 13 years of age, and therefore the date of the offense was an essential element.

{¶ 32} "A precise time and date of an alleged offense are not ordinarily essential elements." *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 43 (12th Dist.), citing *State v. Sellards*, 17 Ohio St.3d 169, 171 (1985). In sexual abuse cases involving children, it may be impossible to provide a specific date. "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness and inexactitude must be made for such cases." *State v. Barnes*, 12th Dist. No. CA2010-06-009, 2011-Ohio-5226, ¶ 12, quoting *State v. Elkins*, 5th Dist. No. 2010-CA-104, 2011-Ohio-3611, ¶ 26. However, there are some exceptions where dates and times are essential and the failure to provide specific dates and times may prejudice the accused. One such exception is where the accused asserts an alibi. *State v. Wagers*, 12th Dist. No. CA2009-06-018, 2010-Ohio-2311, ¶ 19. Likewise, where the age of the victim is an element of the crime charged and the victim bordered on the age required to make the conduct criminal, a specific date becomes essential and the failure to provide one is more likely to prejudice the accused. *State v. Barnes*, 12th Dist. No. CA2010-06-009, 2011-Ohio-5226, ¶ 15. In the case at bar, we are confronted with neither situation.

{¶ 33} Birt did not assert an alibi in this case but rather defended against the allegations by suggesting that T.G. was lying. Additionally, the record is clear that each of

these offenses occurred while T.G. was under the age of 13. The last offense occurred on March 6, 2011 which was prior to T.G.'s 13th birthday. As such, T.G. was 12 years old or younger at all relevant times. Accordingly, the date of the offenses was not an essential element, and Birt suffered no prejudice by the state's failure to establish specific dates and times for each offense.

{¶ 34} Based on the foregoing, we find the trial court did not err in denying Birt's Crim.R. 29 motion for acquittal, and therefore his third assignment of error is overruled.

{¶ 35} Assignment of Error No. 4:

{¶ 36} THE APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 37} In his fourth assignment of error, Birt argues that his convictions for rape, attempted rape, and intimidation of a witness were against the manifest weight of the evidence.[3] In resolving Birt's second assignment of error, we determined that his conviction for intimidation of a witness must be reversed. Accordingly, any argument as to the weight of the evidence supporting this conviction is rendered moot. App.R. 12(A)(1)(c). As to his convictions for rape and attempted rape, Birt contends his convictions were against the manifest weight of the evidence because (1) the record reflects the total lack of a consistent narrative, both from T.G. and Morningstar, as to the alleged events of March 6, 2011; (2) the record casts serious doubts on both T.G.'s and Morningstar's credibility; and (3) there was a lack of conclusive physical evidence connecting Birt to the acts of abuse.

{¶ 38} A manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.

---

3. Within the fourth assignment of error, Birt also lists his conviction for reckless operation as being against the manifest weight of the evidence. However, because Birt failed to separately argue this in his brief or provide any citations to the record supporting his argument, we will not address this argument. *See* App.R. 12(A)(2); App.R. 16(A).

*State v. Rose*, 12th Dist. No. CA2011-11-214, 2012-Ohio-5607, ¶ 58. A court considering whether a conviction is against the manifest weight of the evidence must review the entire record, weigh the evidence and all reasonable inferences and consider the credibility of the witnesses. *State v. Bryant*, 12th Dist. No. CA2011-06-109, 2012-Ohio-678, ¶ 13, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39. Although this type of review permits a reviewing court to consider the credibility of witnesses, the review must nevertheless be tempered by the principle that weight and credibility issues are primarily matters for the trier of fact to decide. *State v. Kash*, 12th Dist. No. CA2002-10-247, 2004-Ohio-415, ¶ 25, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Consequently, the question upon review is whether in resolving conflicts in evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Bryant* at ¶ 13. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances and only when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 39} Birt was convicted of five counts of rape (Counts 1, 3-6), in violation of R.C. 2907.02(A)(1)(b). Birt was also convicted of one count of attempted rape (Count 2). R.C. 2923.02(A) defines a criminal attempt and provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." As to the offense of rape, R.C. 2907.02(A)(1)(b) provides: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * the other person is less than thirteen years of age." Sexual conduct is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or

any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A).

{¶ 40} Birt was convicted of five counts of rape by engaging in sexual conduct with T.G. while she was under the age of 13. Count 1 included the additional allegation that the rape occurred when T.G. was less than ten years old. Each rape count corresponded to a specific time period, namely: 2005 through 2006 (Count 1), March 2008 through December 2008 (Count 3), 2009 (Count 4), 2010 (Count 5), and March 6, 2011 (Count 6).

{¶ 41} As to Count 1, T.G. testified that the first time Birt raped her, the two were living at a Germantown apartment. She explained: "[m]y dad woke me up, and I had a long shirt on and just my panties, and my dad pulled down my underwear, and then he pulled down his pants, and grabbed my sides, and he stuck in on me. * * * I was crying and screaming, and I was bleeding." She further testified that this event occurred when she was in the third grade, and about eight or nine years old. Gehlauf confirmed that T.G. and Birt lived in the Germantown apartment in 2005.

{¶ 42} As to Count 6, T.G. testified that on March 6, 2011, when she was 12 years old, her father told her to go to his bedroom. "[M]y dad came in there in the bedroom, and he told me to pull my pants down, so when I pulled my pants down, my dad pulled down his pants, and he stuck it in my vagina, and he kept doing it." T.G. indicated that at some point, Birt stopped to see if their houseguest, Morningstar, was still in the shower. When Birt returned to the bedroom, T.G. testified that Birt once again pulled his pants down to his knees and told her to "suck his penis." T.G. testified that Morningstar pushed opened the door to the bedroom and saw what she was doing. T.G. explained that Birt pulled up his pants once Morningstar entered the room, however, this did not end the abuse. Once Morningstar left, T.G. testified that Birt started all over again. Birt pulled down his pants and her pants and inserted his penis in T.G.'s vagina, mouth, and anus. Morningstar provided testimony

corroborating T.G.'s description of the events on March 6, 2011.

{¶ 43} Morningstar testified that he went over to Birt's residence on that day because he had gotten into a fight with his "old lady." At some point in the early afternoon, Morningstar took a shower. Morningstar testified that after the shower, he went back to Birt's bedroom to ask for a cigarette. He explained that the door was cracked open about an inch and a half, so "I swung the door open, and all I could get out of my mouth is, 'Can I get a – ' and Jerry had jumped, turned around with his penis sticking out of his pants, and his daughter wiping her mouth off."

{¶ 44} As to the remaining rape convictions, Counts 3, 4, and 5, after detailing the events of March 6, 2011, T.G. testified that this type abuse occurred "almost every week." She explained that it occurred almost every time Gehlauf was working. T.G. further testified that the abuse occurred at the house in Middletown and included, "suck[ing] his penis, and he'll stick his penis in my vagina and my butt." She specified that these events occurred in 2008 when she was 10 years old, in 2009 when she was 11, and when she was 12 years old in 2010.

{¶ 45} Birt was also convicted of attempted rape under Count 2 for attempting to engage in sexual conduct with T.G. in 2005 through 2008, while she was under the age of 13. T.G. testified that one night at the Germantown house:

> [Birt] came in my room, and he pulled my pants and panties off, and then he pulled his shorts down, and he got on top of me, but he didn't do anything because he heard Carrie walking up to go to the bathroom, so my dad hurried up and pulled his shorts, and he ran around the corner and pretended that he came out of the bathroom.

{¶ 46} T.G.'s testimony was supported by the testimony of Gehlauf who stated that, while living in the house in Germantown, she thought she saw Birt leaving T.G.'s bedroom in the middle of the night. Gehlauf testified that she checked on T.G. and found her in her room

without any pants on. The testimony from both Gehlauf and T.G. indicated that the family lived at the Germantown house in 2005 through March or June of 2008 when they moved to Middletown, Ohio.

{¶ 47} From the above testimony the jury could have found each essential element of rape and attempted rape. Birt, however, argues that T.G and Morningstar's testimony was not credible and the testimony regarding the events of March 6, 2011 were inconsistent. Birt asserts that T.G. was not credible because she had previously alleged that he molested her but later recanted explaining that she made the allegations so her mother could get custody of her. He also argues that Morningstar was not credible because he had a motive to provide favorable testimony for the state. At trial, the court admitted as an exhibit, a letter Morningstar wrote to the prosecutor asking if he could get some "help" on his felony theft case because he was testifying against Birt. Birt contends that the jury's decision to overlook these issues of credibility demonstrates "a clear and manifest miscarriage of justice." However, the credibility of the witnesses and weight to be given to their testimony are ultimately matters for the trier of fact to resolve. *State v. Amburgey*, 12th Dist. No. CA2005-01-007, 2006-Ohio-1000, ¶ 6, citing *State v. DeHass,* 10 Ohio St.2d 230, 231 (1967). The jury heard about T.G.'s prior unfounded allegations of abuse against Birt and her tendency to be untruthful. The jury was free to believe all, part of, or none of T.G.'s testimony. *See State v. Widmer*, 12th Dist. No. CA2011-03-027, 2012-Ohio-4342, ¶ 107. Similarly, the jury heard testimony regarding Morningstar's possible motivation to lie and even received a copy of the letter. Again, the jury was free to believe all, part of, or none of Morningstar's testimony. The jury's decision to find T.G. and Morningstar credible, even in light of the above evidence, does not render the verdict against the manifest weight of the evidence.

{¶ 48} Birt also contends that his convictions were against the manifest weight because there was no "physical evidence connecting [him] to the alleged acts of abuse."

Yet, such corroborating physical evidence is unnecessary in a rape case. *State v. Rose*, 12th Dist. No. CA2011-11-214, 2012-Ohio-5607, ¶ 63, citing *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 53. Although physical evidence is not required, the record indicates that there was some physical evidence connecting T.G. and Birt. After the incident on March 6, 2011, Gehlauf took T.G. to Children's Hospital where a rape kit was collected on March 7, 2011. The rape kit included swabs from T.G.'s chest and neck areas. Steven M. Wiechman, a forensic scientist with the Miami Valley Regional Crime Lab, testified that Birt could not be excluded as a contributor to the DNA mixture on the left breast and neck swabs taken from T.G. Wiechman also testified that he found Birt was a major contributor of the DNA mixture found on the right breast swab. Birt also takes issue with the lack of semen found on the vaginal, oral, and rectal samples taken from T.G. Wiechman explained that the lack of semen was not inconsistent with a sexual assault as sometimes it simply is not left or in some instances he may not be able to find it.

{¶ 49} After a review of the record, we cannot say the trier of fact clearly lost its way and created a miscarriage of justice by convicting Birt of five counts of rape and one count of attempted rape. The jury weighed the evidence, resolved the inconsistencies in the testimony, considered the totality of the evidence and found Birt guilty. Thus, Birt's conviction is not against the manifest weight of the evidence. Birt's fourth assignment of error is overruled.

{¶ 50} Assignment of Error No. 5:

{¶ 51} THE TRIAL COURT'S DECISION TO ADMIT TESTIMONY THAT APPELLANT WAS USING CRACK COCAINE ON MARCH 6, 2011 WAS AN ABUSE OF DISCRETION.

{¶ 52} In his fifth assignment of error, Birt argues that the reference to his use of crack cocaine during Morningstar's testimony should have been excluded pursuant to Evid.R. 403(A). At trial, Morningstar testified that while he was at Birt's home on March 6, 2011, Birt

asked if he wanted to "smoke some crack with him." Morningstar further testified that he then saw Birt smoking crack. Birt contends that Morningstar had already testified that Birt had been drinking alcohol that day and Officer Hughes later testified that she detected a strong odor of alcohol coming from Birt when he stepped out of his vehicle. Accordingly, the testimony regarding his use of cocaine was of "minimal probative value" as the testimony was unnecessary to convict him of operating a vehicle under the influence. Furthermore, he argues that the inclusion of this evidence was highly prejudicial due to the "stigmatizing nature of illicit drug use."

{¶ 53} A trial court has broad discretion in the admission and exclusion of evidence. *State v. Martin*, 12th Dist. No. CA2007-01-022, 2007-Ohio-7073, ¶ 9, citing *State v. Finnerty*, 45 Ohio St.3d 104,109 (1989). Consequently, we will not reverse the trial court's decision to admit or exclude evidence absent an abuse of discretion. *State v. Renfro*, 12th Dist. No. CA2011-07-142, 2012-Ohio-2848, ¶ 29. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.

{¶ 54} All relevant evidence is admissible, unless otherwise excluded by law. Evid.R. 402. Evid.R. 403(A) requires relevant evidence to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). For evidence to be excluded on this basis, "the probative value must be minimal and the prejudice great." *State v. Morales*, 32 Ohio St.3d 252, 257 (1987). Moreover, unfavorable evidence is not equivalent to unfairly prejudicial evidence. *State v. Bowman*, 144 Ohio App.3d 179, 185 (12th Dist.2001). The trial court also has the discretion to exclude otherwise admissible evidence, if the probative value is substantially outweighed by "needless presentation of cumulative evidence." *State v. Blake*, 12th Dist. No. CA2011-07-130, 2012-Ohio-3124, ¶ 39; Evid.R. 403(B).

{¶ 55} Birt was charged with operating a vehicle under the influence (OVI), in violation of R.C. 4511.19(A)(1)(a) which provides: "No person shall operate any vehicle * * * if, at the time of operation * * * the person is under the influence of alcohol, a drug of abuse, or a combination of them." The state sought to prove this offense through testimony regarding Birt's consumption of alcohol, the use of cocaine, and the subsequent operation of his vehicle. Birt's use of both alcohol and cocaine were highly relevant as to the OVI charge. Although evidence of Birt's drug use was unfavorable, we do not find that it was *unfairly* prejudicial to Birt. The evidence was highly probative of facts at issue in the case; specifically, whether Birt was under the influence of alcohol, drugs, or a combination of drugs and alcohol when he was driving his vehicle on March 6, 2011. The state's presentation of evidence regarding the use of both alcohol and cocaine also did not constitute "needless presentation of cumulative evidence" and thereby outweigh the probative value as a person can be convicted of an OVI for driving under the influence of alcohol, drugs or a combination of both drugs and alcohol. *See* R.C. 4511.19(A)(1)(a). Moreover, the jury returned a verdict of not guilty on the OVI offense. As such, it appears that the evidence of Birt's cocaine use did not unduly prejudice Birt. Finally, as discussed in our resolution of Birt's fourth assignment of error, the state presented substantial evidence supporting Birt's convictions of the other offenses such that we cannot say that the evidence of his cocaine use inflamed the jury and led to his convictions. Based on the foregoing, we find no abuse by the trial court allowing testimony regarding Birt's use of cocaine on March 6, 2011.

{¶ 56} Birt's fifth assignment of error is overruled.

{¶ 57} Assignment of Error No. 6:

{¶ 58} THE TRIAL COURT'S SENTENCE OF APPELLANT WAS AN ABUSE OF DISCRETION.

{¶ 59} In his sixth and final assignment of error, Birt challenges the trial court's

- 18 -

imposition of consecutive sentences on Counts 1, 3, 5, 6, and 7. As an initial note, in our resolution of Birt's second assignment of error, we reversed and vacated his conviction for intimidation of a witness. Consequently, his sentence for intimidation of a witness is also reversed and vacated. We now review the remaining sentences Birt received as to Counts 1, 3, 5, and 6.

{¶ 60} Appellate courts apply a two-step procedure when reviewing felony sentences. First, courts must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 26. If this first prong is satisfied, then the sentencing court's decision is reviewed for an abuse of discretion. *Id.* at ¶ 26.

{¶ 61} In applying the first prong under *Kalish*, a sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies postrelease control, and sentences a defendant within the permissible statutory range. *Kalish* at ¶ 18; *State v. Rose*, 12th Dist. No. CA2011-11-241, 2012-Ohio-5607, ¶ 78. The trial court has discretion in determining whether the sentence satisfies the overriding purpose of Ohio's sentencing structure and is not required to engage in any factual findings under R.C. 2929.11 or R.C. 2929.12. *Rose* at ¶ 78. Our inquiry under prong one, however, does not end here. The newly amended version of R.C. 2929.14(C)(4) now requires the trial court to engage in a three-step analysis before imposing consecutive sentences.[4] *State v. Smith*, 12th Dist. No. CA2012-01-004, 2012-Ohio-4523, ¶ 21.

---

4. On September 30, 2011, the General Assembly enacted 2011 Am.Sub.H.B. No. 86 (H.B. 86) which revised several sentencing statutes. As Birt was sentenced on February 16, 2012, this legislation applies to him.

**{¶ 62}** Pursuant to R.C. 2929.14(C), the trial court must find: (1) that consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Smith* at ¶ 21; R.C. 2929.14(C)(4).

**{¶ 63}** As to the first prong, Birt challenges the trial court's consideration of the factors in R.C. 2929.12. He contends that the trial court failed to mention whether it balanced the seriousness and recidivism factors found in R.C. 2929.12. However, the judgment entry of conviction clearly indicates that the trial court considered "the principles and purposes of sentencing under [R.C.] 2929.11" and balanced the "seriousness and recidivism factors of [R.C.] 2929.12." Furthermore, the record from the February 14, 2011 sentencing hearing indicates that the trial court considered certain factors contained in R.C. 2929.12, including the age of the victim.

**{¶ 64}** Birt also contends that the trial court relied on elements "outside the statutory framework" to impose his sentence. Specifically, Birt argues that the court based his

sentence "primarily on the consideration that appellant's conduct constituted a 'continuing course of conduct.'" First, R.C. 2929.12 explicitly permits the trial court to consider any relevant factors in imposing a sentence. R.C. 2929.12(A) provides that the court "may consider any other factors that are relevant to achieving those purposes and principles of sentencing." Accordingly, the trial court did not err in sentencing Birt even if it did consider the fact that Birt committed the offenses as a "continuing course of conduct." Moreover, in imposing consecutive sentences, the trial court was required to engage in the analysis set forth in R.C. 2929.14(C)(4). R.C. 2929.14(C)(4)(b) allows for the imposition of consecutive sentences where "[a]t least two of the multiple offenses were committed as part of one or more courses of conduct" and the harm caused by the multiple offenses is so great or unusual that a single prison term does not adequately reflect the seriousness of the offender's conduct. As R.C. 2929.14(C)(4) requires the court to consider whether the offenses occurred as a "course of conduct" in its decision to impose consecutive sentences, we cannot say the trial court erred in imposing consecutive sentences on this basis. Furthermore, upon a review of the record, we find the trial court complied with the dictates of the newly amended R.C. 2929.14(C)(4) and made all the required findings before imposing consecutive sentences.

{¶ 65} Birt does not set forth any additional arguments as to how his sentence was an abuse of discretion. Accordingly, after a review of the record, we find no abuse of discretion.

{¶ 66} Birt's sentences as to Counts 1, 3, 5, and 6 and the decision to run each count consecutive to one another is affirmed. However, Birt's sentence as to Count 7 is vacated. Birt's sixth and final assignment of error is sustained in part and overruled in part.

{¶ 67} The trial court's judgment is reversed in part to the extent that Birt's conviction for intimidation of a witness is reversed and vacated and Birt is discharged as to Count 7. In all other respects, the judgment of the trial court is affirmed.

{¶ 68} Judgment affirmed in part and reversed in part.

M. POWELL, J., concurs.

RINGLAND, P.J., concurs separately.

**RINGLAND, P.J., concurring separately.**

{¶ 69} I concur in the majority's analysis and resolution of Birt's second, third, fourth, fifth, and sixth assignments of error. I also concur, albeit in judgment only, with the majority's decision regarding Birt's first assignment of error. I write separately to reiterate the problems of allowing "course of conduct" prosecutions for sex offenses as stated in my concurring opinion in *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289 (12th Dist.), *appeal not accepted*, 132 Ohio St.3d 1514, 2012-Ohio-4021. Once again, I urge our Supreme Court to provide the courts of this state with the necessary guidance.

{¶ 70} The General Assembly has expressly provided for numerous continuing-course-of-conduct crimes. *E.g.*, R.C. 2913.61 (theft offenses), R.C. 2923.23(A) (engaging in "pattern of corrupt activity"), R.C. 2903.15(A) (permitting child abuse "for a prolonged period"), R.C. 2903.211(A) (menacing by stalking by "engaging in a pattern of conduct"), and R.C. 2919.22(B) (endangering children by parties who "repeatedly administer unwarranted disciplinary measures"). However, there is no such language contained in R.C. 2907.02 for rape or for other sex offenses that expressly or implicitly indicates that these offenses can be charged as a "continuing-course-of-conduct." *See Blankenburg* at ¶ 146. Accordingly, as the statutes are currently written, sex crimes are only single-act crimes. For this court to construe sex offenses as something other than single-act crimes, specifically as continuing-course-of-conduct crimes, would infringe upon the legislature's ability to amend and revise the law as it sees fit. *Blankenburg* at ¶ 145, citing *see, e.g., State v. Phillips*, 12th Dist. No.

CA2009-03-001, 2010-Ohio-2711. As I stated in *Blankenburg*, I realize that the only alternative in lieu of charging under the theory of a continuous course of conduct is to either forgo testimony of all but one of the multiple acts in each count or charge the numerous acts as separate counts. The former may deny the state's ability to seek justice, and the latter may create notice issues. However, this issue should be corrected by the legislature and not the courts.

{¶ 71} The use of "continuing course of conduct" in the indictment in this case, however, was meaningful and proper only as to venue. R.C. 2901.12(H), permits an offender, who commits offenses in different locations, to be tried for all offenses in any location in which one of the offenses or an element of one the offenses occurred. The only limitation is that the offender committed the offenses as "part of a course of criminal conduct." R.C. 2901.12(H). Here, the evidence established that Birt raped T.G. in both Butler and Montgomery Counties. As provided in R.C. 2901.12(H)(1) and (2), Birt's offenses were committed as a course of conduct as these offenses involved the same victim and were committed by Birt in the same relationship to the victim, namely the father-daughter relationship. The use of the term "continuing course of criminal conduct" was proper to establish venue pursuant to R.C. 2901.12(H). However, the term "continuing course of conduct" in this situation should not have been construed to allow the single act crimes of rape and attempted rape to be charged as a continuing course of conduct crime. In this case, the result maybe a distinction without a difference but I believe the distinction needs to be made to avoid future confusion of the two issues of venue and course of conduct crimes. Therefore, as it relates to Birt's first assignment of error, I concur in judgment only.