[Cite as *State v. Sheldon*, 2014-Ohio-5488.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2013-12-018 |
| | : | O P I N I O N |
| - vs - | | 12/15/2014 |
| | : | |
| JEREMY SHELDON, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. CRI 2012-2193


Jessica A. Little, Brown County Prosecuting Attorney, Mary McMullen, 510 East State Street, Georgetown, Ohio 45121, for plaintiff-appellee

Christine D. Tailer, P.O. Box 14, Georgetown, Ohio 45121, for defendant-appellant


**RINGLAND, P.J.**

{¶ 1} Defendant-appellant, Jeremy Sheldon, appeals his conviction in the Brown County Court of Common Pleas for rape. For the reasons detailed below, we affirm.

{¶ 2} In July 2012, appellant was indicted on five counts of rape in violation of R.C. 2907.02(A)(1)(b), all first-degree felonies.[1] The state alleged that appellant sexually abused

---

1. Count one included a specification that the child victim was less than ten years old at the time of the offense. The remaining counts included specifications that the victim was less than 13 years old at the time of the offenses.

his daughter, M.S., on five separate instances from October 2008 to June 2012. The victim was between seven and nine years old when the abuse began, and 12 years old when it ended.

{¶ 3} After the allegations of sexual abuse came to light, M.S.'s mother took M.S. to the Mayerson Center for Safe and Healthy Children at Cincinnati Children's Hospital for an examination. There, M.S. was interviewed by medical professionals, including Andrea Power, a social worker and forensic interviewer who heard M.S.'s account of the sexual abuse and recorded the interview.

{¶ 4} Prior to trial, appellant filed a motion in limine to prevent the jury from hearing the forensic interview between M.S. and Power. The trial court denied appellant's motion in limine.

{¶ 5} A jury trial was held in October 2013. At trial, M.S. testified that appellant sexually abused her numerous times over several years. Although M.S. was unable to recall specific dates and times for each instance of sexual abuse, M.S. did recall where each event occurred and where she lived at the time of the abuse. Specifically, M.S. indicated that appellant sexually abused her twice in Georgetown (Residence 1), twice in Ridley (Residence 2), and once again in Georgetown (Residence 3). M.S. also testified that the sexual abuse she was forced to endure included acts of fellatio, cunnilingus, vaginal intercourse, and anal intercourse. Each episode of sexual abuse occurred while M.S.'s mother was at work.

{¶ 6} In addition to the victim's testimony, the state also presented evidence from M.S.'s mother who authenticated M.S.'s birth certificate and confirmed M.S.'s prior residences, which corroborated the timeline of abuse.

{¶ 7} Next, the state presented testimony from Dr. Robert Shapiro, a physician with the Cincinnati Children's Hospital and Power. Both Dr. Shapiro and Power were asked about their findings related to the physical examination of M.S., as well as the results of a forensic

interview following the allegations of sexual abuse. In addition, the state played, without objection, the videotaped interview between Power and M.S., in which M.S. detailed several instances of sexual abuse.

{¶ 8} Thereafter, the state rested. Appellant did not present any evidence and the case was submitted to the jury. Following deliberations, the jury found appellant guilty on all five counts of rape. The jury also made an additional finding that M.S. was under ten years old at the time of the sexual abuse contained in count one and under 13 years old at the time of the remaining offenses. The trial court then sentenced appellant to life imprisonment.

{¶ 9} Appellant now appeals, raising three assignments of error for review. For ease of discussion, we will address the assignments of error out of order.

{¶ 10} Assignment of Error No. 2:

{¶ 11} APPELLANT'S CONVICTION WAS AGAINST THE MANIFIEST [sic] WEIGHT OF THE EVIDENCE.

{¶ 12} In his second assignment of error, appellant argues that his conviction is against the manifest weight of the evidence.

{¶ 13} A manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 34; *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 78. In determining whether the conviction is against the manifest weight of the evidence, an appellate court "must weigh the evidence and all reasonable inferences from it, consider the credibility of the witnesses and determine whether in resolving conflicts, the [fact finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Coldiron*, 12th Dist. Clermont Nos. CA2003-09-078 and CA2003-09-079, 2004-Ohio-5651, ¶ 24. "This discretionary power should be exercised only in the exceptional

case where the evidence weighs heavily against conviction." *Id.*; *Gray* at ¶ 78.

{¶ 14} Rape is defined under R.C. 2907.02 and provides "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age[.]" Sexual conduct includes, inter alia, vaginal intercourse, fellatio, cunnilingus, and anal intercourse. R.C. 2907.01(A).

{¶ 15} As we have previously noted, "[a] precise time and date of an alleged offense are not ordinarily essential elements." *State v. Blankenburg*, 12th Dist. Butler No. CA2010-03-063, 2012-Ohio-1289, ¶ 43, citing *State v. Sellards*, 17 Ohio St.3d 169, 171 (1985). In sexual abuse cases involving children, it may be impossible to provide a specific date. *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 and CA2013-07-113, 2014-Ohio-3449, ¶ 36. "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. *Id.* An allowance for reasonableness and inexactitude must be made for such cases." *State v. Birt*, 12th Dist. Butler No. CA2012-02-031, 2013-Ohio-1379, ¶ 32, quoting *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 12.

{¶ 16} In this case, appellant was charged with five counts of rape: (1) two counts of rape occurring while M.S. lived at Residence 1 in Georgetown between October 1, 2008 and July 1, 2010; (2) two counts of rape occurring while M.S. lived at Residence 2 in Ridley between July 1, 2010 and February 28, 2011; and (3) one count of rape occurring while M.S. lived at Residence 3 in Georgetown between February 1, 2011 and June 28, 2012.

{¶ 17} The victim testified at trial that the first incident of rape occurred at Residence 1 in Georgetown just prior to the Brown County Fair. During that instance, M.S. testified that she had gone into her parents' bedroom to get a piece of candy when appellant grabbed her, pulled her onto the bed, removed her clothes, and then forced her to put his penis inside her mouth and then pushed her head back and forth. M.S. further explained that "white stuff"

came out of appellant's penis and into her mouth. M.S. testified that she did not report the sexual abuse because appellant threatened to "stick it inside me or whoop me" if she told anyone.

{¶ 18} M.S. testified that the second incident of rape also occurred at Residence 1 in Georgetown. On that occasion, M.S. explained "[appellant] took his clothes off. And pulled me down on the floor, on my knees, pushed my shoulders down, and made me get down on my knees. And then [appellant] put his penis inside my mouth, again." In addition, M.S. also testified that appellant placed her on top of him and pulled her back and forth on his penis. Appellant also touched M.S.'s vagina and performed cunnilingus. M.S. testified that appellant again threatened to harm her if she told anyone.

{¶ 19} M.S. testified that the third incident of rape occurred at Residence 2 in Ripley, Ohio. This time, M.S. testified that appellant called her into the living room where he was sitting on a sofa bed. When M.S. complied, appellant forced her to perform fellatio on him, again, ending when appellant ejaculated in her mouth.

{¶ 20} In addition, M.S. also detailed two additional instances of rape, which occurred at Residence 2 in Ripley.[2] On one occasion, M.S. testified that she was in her pajamas and had gone downstairs to use the bathroom in the middle of the night. Once downstairs, M.S. encountered appellant who then forced her on the couch, pulled off her clothes, and forced her to perform fellatio while pushing her head back and forth. The next incident involved another instance of sexual assault wherein appellant placed powdered sugar from a funnel cake on his genitals and then forced M.S. to perform fellatio on him while pushing her head back and forth. Thereafter, appellant forced M.S. to lean over the bathtub and put his penis between her legs and vagina.

---

2. We note that appellant was only charged with two counts of rape for the sexual assaults occurring at Residence 2 in Ripley even though M.S. detailed at least three instances of sexual assault in Ripley.

{¶ 21} Following these incidents, the family returned to Georgetown and moved into Residence 3. On the final occasion of reported sexual abuse, M.S. once again testified that appellant pushed her to her knees and forced her to perform fellatio on him. During this time, M.S. testified that she was crying and pleading with appellant to stop and appellant, at one point, even pried M.S.'s mouth open in order to force his penis into her mouth. Sometime thereafter, M.S. informed a friend of the abuse who then encouraged M.S. to tell her mother.

{¶ 22} In addition to the evidence presented by M.S., the state also presented the testimony of M.S.'s mother, which corroborated M.S.'s recollection of the dates and times of the abuse, as well as M.S.'s age and date of birth. This testimony also confirmed that appellant was the primary caregiver for M.S. while mother earned income for the family.

{¶ 23} Next, the state presented testimony from Dr. Shapiro, who conducted a physical examination of M.S. Dr. Shapiro testified that he completed an anal and genital examination of M.S. following the allegations of sexual abuse and found that the results were normal. However, Dr. Shapiro explained that a normal finding does not mean that the sexual abuse did not occur. In fact, Dr. Shapiro testified that there is typically no physical evidence of sexual abuse after a six-month or one-year period and "the most common finding, following reports and allegations of sexual abuse assaults * * * is a normal examination."

{¶ 24} Finally, the state presented the testimony of Power, the social worker and forensic interviewer who conducted the interview at the Mayerson Center. Power testified that she conducted an interview with M.S. at the Mayerson Center following the allegations of sexual abuse. In addition, the state played, without objection, the videotaped interview between Power and M.S., in which M.S. detailed several instances of sexual abuse.

{¶ 25} Based on the evidence presented at trial, we conclude the jury's verdict was not against the manifest weight of the evidence. The jury did not clearly lose its way in concluding that appellant was guilty of five counts of rape. While appellant argues that his

conviction is against the manifest weight of the evidence because M.S.'s testimony was not credible and, inter alia, because M.S.'s physical examination came back normal, the jury was free to infer otherwise. Although there were some inconsistencies in the victim's testimony, the jury, as trier of fact, was in the best position to judge the credibility of the witness. The state presented sufficient evidence from which the jury could reasonably conclude that appellant was guilty of five counts of rape. As his conviction was not against the manifest weight of the evidence, appellant's second assignment of error is overruled.

{¶ 26} Assignment of Error No. 1:

{¶ 27} IT WAS ERROR FOR THE TRIAL COURT NOT TO GRANT APPELLANT'S MOTION IN LIMINE TO ALLOW THE STATE TO PLAY THE MAYERSON FORENSIC INTERVIEW TO THE JURY FOLLOWING THE CHILD'S TESTIMONY.

{¶ 28} In his first assignment of error, appellant argues that the trial court erred in denying his motion in limine and permitting the state to introduce the forensic interview between M.S. and Power. Appellant contends that use of the video violated his right to confrontation because some of the questions asked during the interview were leading and were not taken for the purpose of a medical examination or diagnosis. In addition, appellant claims the video interview was duplicative of M.S.'s prior testimony and therefore should have been excluded as unfairly prejudicial pursuant to Evid.R. 403.

{¶ 29} At the outset, we note that a motion in limine, if granted, "is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue." *State v. Vore*, 12th Dist. Warren No. CA2011-08-093, 2012-Ohio-2431, ¶ 37, citing *State v. Grubb*, 28 Ohio St.3d 199, 201-202 (1986). A motion in limine is "directed to the inherent discretion of the trial judge, about an evidentiary issue that is anticipated, but has not yet been presented in full context." *State v. Hensley*, 12th Dist. Warren No. CA2009-11-156, 2010-Ohio-3822, ¶ 29. The trial court's ruling on a motion in limine does not

preserve the record on appeal. Instead, "any claimed error regarding a trial court's decision on a motion in limine must be preserved at trial by an objection, proffer, or ruling on the record[.]" *Id.*

{¶ 30} Because appellant failed to object to the admissibility of this evidence at trial, he has waived any error except plain error. *Id.*; Crim.R. 52(B). Plain error exists where there is an obvious deviation from a legal rule which affected the defendant's substantial rights, or influenced the outcome of the proceeding. *State v. Craycraft*, 12th Dist. Clermont Nos. CA2009-02-013 and CA2009-02-014, 2010-Ohio-596, ¶ 23. Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Grisham*, 12th Dist. Warren No. CA2013-12-118, 2014-Ohio-3558, ¶ 38. Therefore, we will not reverse the trial court's decision unless the outcome of trial would have been different but for the alleged error. *State v. Dougherty*, 12th Dist. Preble No. CA2013-12-014, 2014-Ohio-4760, ¶ 53.

{¶ 31} In *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, the Ohio Supreme Court acknowledged the dual role of the social worker in interviewing a child who may be a victim of sexual abuse from both an investigatory and medical perspective. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 43. The social worker's interview must "gather forensic information to investigate and potentially prosecute a defendant for the offense" as well as "elicit information necessary for medical diagnosis and treatment of the victim." *Id.* The Court determined that those statements made to the social worker for the primary purpose of investigation or forensics, unrelated to an ongoing emergency, are testimonial in nature and are prohibited by the Confrontation Clause without a prior opportunity for cross-examination. *Id.* However, the Court went on to state that those statements made during the social worker's interview which are necessary to diagnose and medically treat a victim are nontestimonial in nature and admissible without violating the

Confrontation Clause. *Id.*

{¶ 32} Based on our review, we find appellant's argument to be without merit. The trial court did not err in allowing the Mayerson interview. As this court has previously recognized "[w]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Gray* at ¶ 48, citing *State v. Rucker*, 1st Dist. No. C-110082, 2012-Ohio-185, ¶ 37; and *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 113. "The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Gray* at ¶ 48; *State v. Simms*, 10th Dist. Franklin No. 10AP-1063, 2012-Ohio-2321, ¶ 42. As previously noted, M.S. testified at trial and was subject to cross-examination on the statements she had made at the Mayerson Center. Thus, any allegedly testimonial statements made by M.S. in her interview with Power did not violate appellant's Confrontational Clause rights because M.S. was available to testify, and did testify, at trial.

{¶ 33} In addition, appellant presents a second issue in this assignment of error and argues the trial court erred by failing to exclude the Mayerson video on the basis that the evidence was repetitive, cumulative, and prejudicial and should have been excluded under Evid.R. 403(B). We disagree.

{¶ 34} All relevant evidence is admissible, unless otherwise excluded by law. Evid.R. 402. Evid.R. 403(A) requires relevant evidence to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). For evidence to be excluded on this basis, "the probative value must be minimal and the prejudice great." *Birt*, 2013-Ohio-1379 at ¶ 55. Moreover, unfavorable evidence is not equivalent to unfairly prejudicial evidence. *Id.* The trial court also has the discretion to exclude otherwise admissible evidence, if the probative value is substantially outweighed by "needless presentation of cumulative evidence." *State*

*v. Blake*, 12th Dist. Butler No. CA2011-07-130, 2012-Ohio-3124, ¶ 39; Evid.R. 403(B).

**{¶ 35}** Based on our review, we find no error in the admissibility of this evidence. While it is true that M.S. had previously testified about the instances of sexual abuse perpetrated by appellant, this court has previously noted that cumulative evidence is not necessarily inadmissible. *Hensley*, 2010-Ohio-3822 at ¶ 22-23; *State v. Dille*, 5th Dist. Morgan No. 03 CA 003, 2004-Ohio-6367, ¶ 15. Moreover, because appellant's trial counsel failed to object to this testimony at trial appellant has failed to show that the admission of this evidence amounted to plain error.[3] As previously discussed, the jury heard ample evidence of appellant's guilt, including the victim's own testimony, as well as the testimony of medical personnel at the Mayerson Center who investigated the allegations of sexual abuse. Accordingly, the Mayerson video, even if believed to be cumulative, was of such a nature, we find any alleged error did not affect appellant's substantial rights or create unfair prejudice and amounts to, at worst, harmless error. Crim. R. 52(A); *Hensley* at ¶ 23.

**{¶ 36}** Therefore, based on our review, we find that the introduction of the Mayerson video did not violate appellant's Confrontation Clause rights or unfairly prejudice appellant. Accordingly, appellant's first assignment of error is overruled.

**{¶ 37}** Assignment of Error No. 3:

**{¶ 38}** APPELLANT WAS NOT AFFORDED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL

**{¶ 39}** In his third assignment of error, appellant argues that he received ineffective assistance of counsel.

**{¶ 40}** "To establish a claim of ineffective assistance of counsel, a defendant must show that his or her counsel's actions were outside the wide range of professionally

---

3. In fact, the record reflects that appellant's trial counsel agreed and worked with the state to redact portions of the videotaped Mayerson interview.

competent assistance, and that prejudice resulted by reason of counsel's actions." *State v. Ullman*, 12th Dist. Warren No. CA2002-10-110, 2003-Ohio-4003, ¶ 43, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Accordingly, counsel's performance will not be deemed ineffective unless (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) he was prejudiced by that deficient performance in that there is a reasonable probability that, but for his counsel's deficient performance, the outcome of his trial would have been different. *State v. English*, 12th Dist. Butler No. CA2013-03-048, 2014-Ohio-441, ¶ 33. A reasonable probability is "a probability sufficient to undermine confidence in the outcome of the proceeding." *State v. Scott*, 12th Dist. Warren No. CA2012-06-052, 2013-Ohio 2866, ¶ 16.

**{¶ 41}** Appellant first argues his trial counsel rendered ineffective assistance by failing to object to any of the exhibits introduced by the state, in particular the Mayerson interview.[4] However, as previously noted, the Mayerson interview did not violate appellant's Confrontation Clause rights and was not objectionable on the basis of Evid.R. 403(B). As such, appellant's argument that his trial counsel was ineffective for failing to object to the Mayerson interview is without merit and would have been meritless if raised by trial counsel. *Vunda*, 2014-Ohio-3449 at ¶ 60 (counsel is not deficient for failing to raise a meritless issue).

**{¶ 42}** Appellant next argues his trial counsel rendered ineffective assistance by failing to cross-examine Dr. Shapiro about the results of the physical examination of the child, which came back normal. In addition, appellant claims that trial counsel should have called an expert witness to testify about the normal findings. However, based on our review, we disagree with appellant's suggestion that trial counsel did not cross-examine Dr. Shapiro about the results of the physical exam as the record plainly rebuts that assertion.

---

4. Although appellant argues that trial counsel should have objected to the other exhibits introduced in evidence, he fails to state a basis on which those objections would have been sustained.

{¶ 43} Moreover, as this court has stated previously, trial counsel's decision to engage, or not engage, in a particular line of questioning is presumed to be the product of sound trial strategy. *State v. Davis*, 12th Dist. Butler No. CA2012-12-258, 2013-Ohio-3878, ¶ 25. Additionally, not hiring a separate expert, and, instead, relying upon the cross-examination of a state's expert to rebut evidence of a crime is a legitimate trial strategy. *State v. Setty*, 12th Dist. Clermont Nos. CA2013-06-049 and CA2013-06-050, 2014-Ohio-2340, ¶ 62. "[S]uch a decision by trial counsel is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant" or render an opinion that substantiates and corroborates the findings of the state's expert. *Id.*

{¶ 44} Next, appellant argues that counsel was ineffective for failing to argue the inconsistencies in the victim's accounts of the various events at closing. Again, this assertion is incorrect as the record reflects that trial counsel did argue that the victim was inconsistent and could not remember specific details. The specific inconsistencies cited in appellant's brief, including the fact that the victim could not recall where her younger sister was at the time of the alleged abuse, amount to minor details, which clearly falls within the ambit of trial strategy. *See, e.g., State v. Wisby*, 12th Dist. Clermont No. CA2012-06-049, 2013-Ohio-1307, ¶ 49 ("[t]he way defense counsel chooses to conduct closing argument is a matter of trial strategy, and cannot be discredited simply because of a guilty verdict"). To belabor all the alleged inconsistencies regarding minor details of each instance of sexual abuse committed against a young victim could very well have alienated the jury.

{¶ 45} Based on our review of the entire record, we find that counsel was not ineffective. The record plainly indicates that appellant's trial counsel did fully investigate this case and zealously represent appellant in this matter.[5] Appellant was not convicted based

---

5. In fact, the record reflects that trial counsel procured plea offers for appellant prior to trial. The final plea offer extended prior to trial provided that appellant would have pled guilty to one count of endangering children and one count of gross sexual imposition in exchange for a dismissal of the rape charges. Appellant rejected those

on ineffective assistance of counsel, but instead appellant's conviction was based on the overwhelming evidence presented at trial. Accordingly, appellant's third assignment of error is overruled.

{¶ 46} Judgment affirmed.

HENDRICKSON and PIPER, JJ., concur.

---

offers and was instead convicted of five counts of rape with specifications and is now serving a term of life in prison.