[Cite as *State v. Ward*, 2016-Ohio-7627.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                               :

     Plaintiff-Appellee               :    C.A. CASE NO. 26916

                                     :

v.                                          :    T.C. NO. 15CR56

                                     :

JAMES A. WARD                               :    (Criminal appeal from
                                     :     Common Pleas Court)

     Defendant-Appellant             :

                                     :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___4th___ day of _____November_____, 2016.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

SEAN BRINKMAN, Atty. Reg. No. 0088253, 10 W. Monument Avenue, Dayton, Ohio 45402
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, P.J.

    **{¶ 1}** This matter is before the Court on the Notice of Appeal of James A. Ward, filed November 18, 2015. Ward was convicted, following a jury trial, on one count of retaliation (public servant/attorney), in violation of R.C. 2921.05(A), and intimidation of a victim/attorney (by threat), in violation of R.C. 2921.04(B), both felonies of the third

degree. At disposition the court merged the offenses and the State elected to proceed to sentencing on the retaliation conviction. The court imposed a sentence of 36 months, to be served consecutively to the sentences previously imposed in Montgomery County Case Nos. 2005-CR-5065 and 2006-CR-3392. We hereby affirm the judgment of the trial court.

{¶ 2} Ward was indicted on January 13, 2015, and he pled not guilty on January 28, 2015. On October 26, 2015, the State filed a "Motion of Prosecuting Attorney to Depose a Material Witness," seeking permission to depose Trooper Keith Fellure of the Ohio State Patrol, who would be unavailable at the time of trial.

{¶ 3} Trial commenced on November 2, 2015. At the start thereof defense counsel noted that the complaining witness herein is a prosecuting attorney in the Montgomery County Prosecutor's Office, and he requested that independent counsel be appointed to represent the State. He further objected to the use of Trooper Fellure's deposition, since "[i]t deprives my client of the ability to cross-examine or confront the witness in open court before the jury." The court overruled the request for the appointment of independent counsel, and it noted that the use of Fellure's deposition was allowed since Fellure was unavailable for trial.

{¶ 4} Julie Bruns testified that she is an Assistant Prosecuting Attorney for the Montgomery County Prosecutor's Office, having been so employed for approximately 20 years. She stated that she is currently the chief of the juvenile division, having held that position for 10 years, prosecuting juvenile delinquency cases. Bruns stated that she prosecuted James Ward eight or nine years ago, and that he was tried as an adult. She stated that the "particular cases for which I prosecuted him were what we call

discretionary transfers. So those require two different hearings." Bruns stated that at the initial hearing, probable cause that a crime was committed by Ward was established, and the second hearing was held after a probation report was completed as well as a psychological examination of Ward. She testified that there were two cases involving Ward, and "the one case came over first and we prosecuted it, and then after he actually entered his plea and was sentenced, the second case actually came through and we tried that one as well." After refreshing her recollection regarding Ward's offenses by means of his judgment entries of conviction, Bruns testified that in Case No. 2005-CR-5065, Ward was "convicted of two counts of rape, one count of attempted rape, one count of aggravated burglary, two counts of burglary and one count of kidnapping." Bruns stated that he was sentenced to a prison term of 20 years in that case. Bruns further testified that in Case No. 2006-CR-3392, Ward "was convicted of attempted rape with a one-year firearm specification, felonious assault with a one-year firearm specification, gross sexual imposition with a one-year firearm specification, and gross sexual imposition with a one-year firearm specification, and abduction with a one-year firearm specification." Bruns stated that in that case Ward "received an 11-year sentence to run consecutive to the prior case."

{¶ 5} Bruns stated that she received correspondence from Ward at the Montgomery County Prosecutor's Office "within the last year," and that "in the return address label it had James Ward's name and the address of the penitentiary where he was." She stated that Ward, in the letter, "made reference to the * * * cases I prosecuted him in. So that's how I was able to identify that it had come from him, and then he signed his name at the end as well." Bruns stated she became alarmed by the contents of the

letter, and she put it and the envelope into a plastic baggie from her desk drawer and zipped the baggie shut. Bruns stated that she advised her boss about her receipt of the letter, and then she gave the letter to "Gary Ware, our investigator at the time." Bruns identified, as State's Exhibit 1, the baggie, the envelope and the letter from Ward. She stated that the letter is "two pages, but really three, because front and back and then front." Bruns read the letter to the jury as follows:

"Ms. Bruns, you may not remember who I am after all these years, knowing you've helped convict many people even at a young age."

* * *

"And given so much time that it destroys their family relationships and so much more. Young juveniles that could have just been put through treatment, but you ain't the type that cares. You care nothing about the young or old; just lock up all the people you feel needs to be off the streets.

"Well, Julie, this is James Ward. I was one of them juveniles you helped convict of a rape case in 2005 and 2006. You got me mandatory years on my first case, 11 on my second, and ever since then, my family relationships have been destroyed due to lack of contact in here, and all I really think about is when am I ever going to see my family again.

"What, when I'm 36 to 48 years old? My father is getting old and my grandmother is dying, neither I get to see. I've developed so much hurt and pain over the years, Julie, that turn to so much anger and rage. Why? Because I've realized many years ago that what I did was wrong and have actually made changes in my life, but does the courts or you really give a -

- give a damn to let me go home?   No.   All you care about is locking people up, so-called criminals, when we're nothing but human beings that just need help.

"It's this type of treatment we get that really makes us into the monsters you all first indicate that we are, so look and listen closely, Julie. I'ma (sic) to show you the monster you helped turn me into by sending me to prison for all this time.   They say the worst you can do is lock someone up to where he has so much time to develop plans on how to get away with doing things.

"The worst mistake the government ever does it puts all of us so-called criminals together; murderers, hit men, drug dealers and so much more.   Basically, y'all putting a label on us that we really ain't.   So this is what it is, Julie, either you overturn both my cases or get my time took down to just 14, which will leave me with six more years, or I'm [sic] send death your way through people, I've come to - -through people I've come to meet while in here, and if you think it's a game, just try me, because as far as I know, it ain't s*** you can do to stop me.

"You're there and I'm here, right where I need to be to send the word and get your life took along with everybody else.   Yeah, that's right, you along with all the detectives that was working my case.   They don't believe I sent that letter but only time will tell, and right now, time is getting short. Julie, it's your call, live or die, but time is on my side, not yours nor theirs, take care.

"Plus, you got me paying all this darn court costs that I can't even f***ing pay.   For years, I've been struggling to get the things I need, but you don't" - - sorry - -"you don't give a f*** about that.   So what do you think I give a f*** about; definitely not you.   Just be ready when that time comes."

{¶ 6}  Bruns testified that when she initially read the letter she did not "know what he's exactly capable of or where he's being housed or who he may have met.   So I thought it was important to pass along and have somebody take a look into it and just see if there was anything really to it."

{¶ 7} Gary Ware testified that he is retired after 42 years of employment as an investigator in the Montgomery County Prosecutor's Office.   He stated that on November 12, 2014 he was asked by Mat Heck to investigate the letter received by Bruns. Ware stated that he contacted Bruns, advised her not to touch the letter, and then retrieved it from her and placed in "our property room."   He stated that when he obtained the letter, it was in "like a Ziploc bag-type of an envelope."   Ware identified the baggie, the envelope and the letter.   Ware stated that he removed the letter from the property room and transferred it to the Bureau of Criminal Investigation ("BCI") in early December of 2014. Ware testified that he "requested that it be checked for fingerprints and I also requested it be checked for DNA of Mr. Ward.   And I also compared with fingerprints and DNA of Mr. Ward.   And also I had obtained a known handwriting exemplars [sic] from Mr. Ward and had submitted those with the letter asking that a handwriting analysis be done to see if he was the author of the letter."   According to Ware, he "called a state trooper down * * * in Lucasville where Mr. Ward was incarcerated and asked him to obtain a voluntary DNA sample.   Apparently he could not do that so he went and got a search warrant from

a local judge down there and obtained the DNA sample from Mr. Ward with that search warrant." Ware identified as State's Exhibit 4 the envelope he received from the state trooper containing Ward's DNA sample. Ware stated that he contacted John Skidmore, an investigator at Lucasville prison, who mailed Ward's handwriting exemplars to him, and Ware identified copies of the samples he received. Ware testified that after the BCI analysis was completed, he retrieved the evidence and put it in the evidence room.

{¶ 8} Linnea Mahlman testified that she is the institutional inspector at Southern Ohio Correctional Facility, having been so employed for nine years, with a total of 20 years of employment at the facility. Mahlman testified that she addresses inmate complaints that she receives in writing. She stated that once an inmate files "his informal complaint, he has to kite me for a grievance form." She stated that she then investigates the allegations. Mahlman testified that John Skidmore obtained two informal complaints and a kite written by Ward from her, and she identified them as State's Exhibit 8.

{¶ 9} Jessica Toms testified that she is a quality assurance supervisor at BCI, in London, Ohio, where she has been employed for nine years. She stated that the "main area of expertise that I was trained in was question document examination." Toms stated that she has previously provided expert testimony in forensic document examination 11 times in Ohio, and the trial court declared her an expert in the field. Toms identified State's Exhibit 1A and testified that the "item is labeled with a BCI laboratory label, for BCI Case Number 14-110098, Item Number 1.2. And then also, it has my initials, and the date that I sealed the item, as well as the case numbers, and the initials on the back." Toms opened the exhibit and identified "images that remained of the envelope and letter that were submitted in BCI Case Number 14-110098, Item Number 1

prior to processing for latent prints." Toms stated, "[t]his, along with the original letter was used, and they have my initials in ink here." Toms stated that "in this case I had both the original and the images that we had made, for comparison, if the ink had been destroyed in the original, during latent print processing." Toms also identified State's Exhibit 8, and she testified that it "is Item Number 2, for BCI Case Number 14-110098. Again, the label's on it. My initials are on this seal, here, as well as the case number. And my initials and the case number are also on the items. And these were copies of writing that was submitted to us for comparison to the known writing." Regarding the analysis of Ward's writing, Toms stated that the "conclusion was that the writer of the known James Ward samples that were submitted was the same writer that wrote the question letter and envelope." Toms stated she concluded that "the writer of the known writing wrote the question writing" to a reasonable degree of scientific certainty.

{¶ 10} Andrea Weisenburger testified that she is employed at BCI as a forensic scientist in the DNA section, having been so employed since February of 2012. She stated that she has performed DNA analyses "[t]housands of times," and that she has provided expert testimony in DNA testing ten times. Weisenburger testified, "when we're looking at DNA, we're looking at 16 different locations. So when you're looking at the pictures next to each other, you're going to compare each location and see if they are the same or if they are different." She stated, if "they are the same at every one of those locations, then we call that included and we do do a statistic. If they are different at any locations, then they are excluded and no statistic will be performed." Weisenburger stated she followed the appropriate procedures herein, which she described. She testified that "[i]tem one was an envelope with a letter. And then item three was oral swabs from

James Ward." She stated that she obtained a single source DNA profile from the envelope seal and one from the swabs, and she compared them. Weisenburger testified that "James Ward's DNA profile, he was included in the evidence profile from the sample from the envelope." She concluded to a reasonable degree of scientific certainty that the DNA profile from the envelope matched the DNA profile from James Ward.

{¶ 11} The deposition of Keith Fellure was played for the jury. He testified that he is "employed as a trooper in the Investigative Services section out of our Jackson District Headquarters" in Jackson, Ohio, having been so employed for 24 years. Fellure stated that he was contacted by Ware via phone and email, and that he obtained a search warrant to collect a sample of Ward's DNA. Fellure stated that he executed the warrant at the Southern Ohio Correctional Facility in November of 2014. Fellure stated that he sent the DNA sample he obtained from Ward to Ware at the Montgomery County Prosecutor's Office, and he identified the envelope containing the samples.

{¶ 12} Carl Steele testified that he is employed at the Montgomery County Sheriff's Office in the Fingerprints Department. He stated that he received training in obtaining fingerprints at the Miami Valley Regional Crime Lab, BCI and the FBI. Defense counsel stipulated to Steele's expertise in fingerprinting. Steele testified that he obtained Ward's fingerprints on January 26, 2015, and he identified "the journal that is kept in our office of everybody that's fingerprinted, and who did it." Steele testified that Ward's fingerprints were "electronically transmitted to the Miami Valley Regional Crime lab, BCI&I, and the FBI in West Virginia."

{¶ 13} Daniel Steiner testified that he is a forensic scientist at BCI. After he described his background and experience, the court declared Steiner an expert in the

field of fingerprint examinations. Steiner stated that he retrieved a latent print from the letter Ward sent to Bruns, and that he compared it to Ward's inked print. According to Steiner, he "was able to identify the right little finger of the fingerprint card bearing the name of James Ward to the latent print that was recovered from the letter" that he received in the course of his employment at BCI. In comparing prints, Steiner stated that the prints matched to a reasonable degree of scientific certainty.

{¶ 14} At the conclusion of the State's case, defense counsel moved for an acquittal as follows:

> * * * Basically, I am arguing * * * that the second count in this particular case, the intimidation of an attorney in a case, is inapplicable. The basic idea of this, is that the case has not been pending for eight or nine years, as a result. The attorney in the case has already discharged the duties to the extent that were necessary, and that there would be no reason to see this applied to an old case.

> * * * If that were not the case, then anybody who is a witness or a victim or an attorney in a case, would be forever then protected by this higher level of offense, even though there would be nothing for that witness, victim, or attorney to do in the discharge of their duties.

> And, so I strongly suggest that when it comes to the intimidation of an attorney * * * It has to be during a current, pending case that that cannot survive the Rule 29. Because there is nothing that anyone could do, this Defendant included, that would have * * * influenced or change[d] the manner in which an attorney discharged her duties over a case that is long

since over.

With respect to the first charge, I am going to similarly make a motion for a Rule 29 acquittal. My suggestion to the Court, in regards to that, is that this was not a retaliation. A retaliation classically is one where an individual says, because you did this to me, I in turn now will do X, Y, or Z to you. That's not the case. The tone of the letter, which is purportedly written by the Defendant, indicates that he wants essentially Ms. Bruns['] assistance in a matter where she could not possibly, and it's a legal impossibility for her to even do this. But, he wants her assistance in reducing the number of years that he is to serve, and should she not do that, then he is going to take certain actions to see that she is seriously harmed or killed.

That is extortion or coercion or any number of things, but it is not retaliation, because you did this to me, I am now - - am going to, in turn, do this to you. And, the third point that I make in the motion for the Rule 29 Motion, is that proper venue lies not in Montgomery County, but in Scioto County. * * *

Defense counsel also filed a written "Motion for Acquittal," relying in part on *State v. Birt*, 2013-Ohio-1379, 5 N.E.3d 1000 (12th Dist.) Ward asserted that the intimidation statute did not apply to him because "there must be a case pending."

{¶ 15} The trial court overruled the motion for acquittal as follows:

* * * The Court finds the venue is proper in Montgomery County, because the letter was delivered to Montgomery County, * * * it was sent in an envelope addressed to Dayton, Ohio where * * * Ms. Bruns is the

assistant prosecuting attorney. She received the letter here, this is her place of work, so Montgomery County is proper venue. Scioto County may be proper too, but the Court doesn't need to decide that. With regard to the two counts with which it is charged, the Court construes the evidence most strongly in the State's favor.

The letter indicates, and we know that Ms. Bruns prosecuted Defendant on two cases, 2005, 2006. She was - - he was convicted of two counts of rape on the first case, in 2005, sentence of 20 years, that's two ten year sentences consecutively. And, then on 2006, he was * * *convicted of attempted rape, a gun spec, an abduction, consecutively sentenced for 11 years, * * *. * * * It's evident from the letter that he sent this letter to her, threatening her because she was the prosecuting attorney in that particular case. Assistant prosecuting attorney in that particular case.

And, * * * he also indicated in there, that he - - that either she overturn his case, or get his time taken down to just 14 years, that'll - - leave him six more years to do, or I'm going to send death your way for [sic] people I've come to meet while in prison. So, the court agrees that this letter goes to past acts of Ms. Bruns in prosecuting Defendant, as well as on future acts that he wants her to take, as the assistant prosecutor who prosecuted him.

So, the Court finds that there is sufficient grounds to take the - - send this case to the jury, and will overrule the Rule 29 Motion.

**{¶ 16}** Ward asserts two assignments of error herein which we will consider

together. They are as follows:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO OHIO RULE OF CRIMINAL PROCEDURE 29.

a. Was the evidence presented, viewed in the light most favorable to the State, sufficient to satisfy all elements of Intimidation of an attorney?

b. Was the evidence presented, viewed in the light most favorable to the State, sufficient to satisfy all elements of Retaliation?

And,

THE TRIAL COURT ERRED BECAUSE APPELANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

a. Was sufficient evidence presented to satisfy all elements of Intimidation of an attorney?

b. Was sufficient evidence presented to satisfy all elements of Retaliation?

{¶ 17} As this Court has previously noted:

Crim.R. 29 provides that a trial court must enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A). "When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. A guilty

verdict will not be disturbed on appeal unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.' (Citation omitted.) *State v. Knight*, 2d Dist. Greene No. 2003CA14, 2004–Ohio–1941, ¶ 15, quoting *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997).

*State v. Welch*, 2d Dist. Montgomery No. 25921, 2014-Ohio-3349, ¶ 8.

{¶ 18} As this Court further noted in *Welch* regarding a manifest weight challenge:

* * * In that regard, we review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *State v. Gabriel*, 170 Ohio App.3d 393, 2007–Ohio–794, 867 N.E.2d 474, ¶ 78 (2d Dist.), *rev'd on other grounds sub nom, In re Ohio Criminal Sentencing Cases*, 116 Ohio St.3d 31, 2007–Ohio–5551, 876 N.E.2d 528, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

*Welch*, ¶ 10.

**{¶ 19}** Regarding intimidation, Ward asserts that the "existence of a criminal action or proceeding is an essential element of the offense." He asserts that a "person's potential involvement is not sufficient to satisfy the element of a criminal action or proceeding." According to Ward, R.C. 2921.04(B) does not apply in the absence of a criminal action or proceeding at the time of the threat. He asserts that the "Intimidation statute, and the Retaliation statute should be construed *in pari materia* as they relate to the same general subject matter," and that "Intimidation differs from Retaliation because Intimidation occurs prior to a judicial decision, while Retaliation occurs after a judicial decision," citing *State v. Lambert*, 2d Dist. Montgomery No. 16667, 1998 WL 288957 (June 5, 1998). Ward argues that the "State failed to present evidence that the attorney in the present case was involved in a criminal action or proceeding," since Bruns testified that she prosecuted Ward eight or nine years prior to trial. In other words, Ward asserts that Bruns' involvement in Ward's court proceedings was "completed" prior to the letter being mailed to her, and "based on the lack of evidence of a criminal action or proceeding, the trial court erred in denying Appellant's motion for acquittal."

**{¶ 20}** Regarding retaliation, Ward asserts that retaliation "requires an action taken in return for a past occurrence, as opposed to intimidation which requires a threat intended to inhibit future activity." Ward argues that the "retaliation statute applies to actions that are made in response to an individual already discharging some or all of her duties." Ward asserts that the State "failed to present sufficient evidence of retaliation. The letter threatens to 'send death your way' if Ms. Bruns did not overturn both of Appellant's convictions or reduce his prison sentence to 14 years." According to Ward,

"the letter seeks Ms. Bruns to perform a future act or face the threatened response. * * * The letter does not threaten harm to Ms. Bruns for the prosecution of Appellant in his earlier case." Ward asserts that he "does not make any threats based upon the past prosecution. * * * The evidence presented was insufficient to satisfy the element that the person 'retaliate' against an attorney of public official."

{¶ 21} In his second assignment of error, Ward asserts that there "was no evidence that there were any court proceedings occurring at the time Ms. Bruns received the letter. Therefore, the conviction for Intimidation was against the manifest weight of the evidence." Finally, Ward asserts that although "the letter indicates displeasure with the sentence and lack of treatment Appellant received, the threat was not directed at any past conduct by Ms. Bruns. * * * The verdict was against the manifest weight of the evidence because the State failed to establish that Appellant retaliated against Ms. Bruns."

{¶ 22} R.C. 2921.04(B) proscribes intimidation and provides:

(B) No person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder any of the following persons:

(1) The victim of a crime or delinquent act in the filing or prosecution of criminal charges or a delinquent child action or proceeding;

(2) A witness to a criminal or delinquent act by reason of the person being a witness to that act;

(3) An attorney by reason of the attorney's involvement in *any* criminal or delinquent child action or proceeding. (Emphasis added).

{¶ 23} R.C. 2921.05(A) proscribes retaliation and provides:

(A) No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness.

{¶ 24} Regarding intimidation, Ward's arguments fail for multiple reasons. We initially note that Ward's reliance upon *Birt* was misplaced; Birt was charged with intimidating a witness in violation of R.C. 2921.04(B), and the version thereof in effect at the time proscribed in part intimidation of a witness " 'involved in a criminal action or proceeding.' " *Birt*, 2013-Ohio-1379, at ¶ 18. Since Birt's "threats occurred prior to any proceeding in a court of justice," the Twelfth District determined that "there simply was no pending criminal proceeding at the time the threats were made. Accordingly, no rational trier of fact could have found the essential elements of R.C. 2921.04(B) were proven beyond a reasonable doubt." *Id.*, ¶ 21. The Twelfth District noted that "effective June 4, 2012, the General Assembly amended R.C. 2921.04 such that the offense now also includes attempts to intimidate a witness regardless of whether an action or proceeding is pending. However, this amendment is not applicable to Birt and our discussion is limited to the prior version of R.C. 2921.04." *Id.*, ¶ 18, fn. 2.

{¶ 25} Similarly, we note that the defendant in *Lambert* appealed his conviction for retaliation in violation of R.C. 2921.05(B), which provided " 'No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against the

victim of a crime because the victim filed or prosecuted criminal charges.' " *Lambert,* 1998 WL 288957, at *4. This Court concluded that the statute was "not clear whether or not the threat must be uttered directly to the person against whom the retaliation is sought. Because the statute is ambiguous on this point, we avail ourselves of other sources from which to discern the intent of the legislature and resolve the ambiguity." *Id.* This Court concluded as follows:

> The statute at issue, which was introduced as H.B. 88 on February 1, 1995, was described as expanding current law concerning intimidation to include retaliation. Ohio Legislative Service Commission, Summary of Discussion on H.B. 88, House Judiciary and Criminal Justice Committee, October 4, 1995. In addition, the distinguishing characteristic between intimidation and retaliation was said to be that intimidation occurs before a judicial decision, whereas retaliation occurs after a judicial decision has been rendered. *Id.* The retaliation statute, therefore was intended to correspond to the intimidation statute in its effect, save that it is applicable only after judgment has been rendered on the underlying offense. * * *
>
> Further indication of the legislature's intent is evident in the similarity of language in the two statutes.

*Id.*

{¶ 26} This Court then considered the text of R.C. 2921.03(A), (not R.C. 2921.04), which it quoted as follows: " '(A) No person, knowingly and by force, by unlawful threat of harm to any person or property, * * * shall attempt to influence, intimidate, or hinder a * * * witness involved in a civil action or proceeding in the discharge of the person's duties

of * * * witness.' " Like *Birt*, *Lambert* does not support Ward's assertion that a pending case is required for R.C. 2921.04(B) to apply.   By its plain language, R.C. 2921.04(B) prohibits the intimidation of an "attorney by reason of the attorney's involvement in *any* criminal * * * proceeding."

{¶ 27}   Further, weighing all the evidence in a light most favorable to the State, and having thoroughly reviewed the entire record, there is no basis to conclude that the trial court erred in overruling Ward's motion for acquittal, or that his conviction is against the manifest weight of the evidence. Bruns testified that she is an attorney who previously prosecuted Ward in two criminal proceedings, and that she received the above letter from Ward at her workplace. The testimonies of Ware, Mahlman, Toms, Weisenburger, Fellure, Steele, and Steiner establish that Ward authored the letter. The letter contains multiple unlawful threats of harm to intimidate Bruns into overturning Ward's convictions or reducing his sentences.   Ward wrote, "either you overturn both my cases or get my time took down to just 14 * * *   or I'm [sic] send death your way * * * through people I've come to meet while in here, and if you think it's a game, just try me, because as far as I know, it ain't s*** you can do to stop me."   Ward further wrote that he is "right where I need to be to send the word and get your life took," and "time is getting short. Julie, it's your call, live or die, but time is on my side * * *."   As the State asserts, and for the foregoing reasons, Ward's arguments fail.

{¶ 28}   Regarding retaliation, weighing all of the evidence in a light most favorable to the State, and having thoroughly reviewed the entire record, we conclude that the trial court did not err in overruling Ward's motion for acquittal, and that Ward's retaliation conviction is not against the manifest weight of the evidence.   In his letter, Ward wrote,

"I was one of them juveniles you helped convict of a rape case in 2005 and 2006. You got me 20 mandatory years on my first case, 11 on my second, and ever since then my family relationships have been destroyed due to lack of contact in here * * *." He further wrote, "* * * look and listen closely, Julie. I'ma (sic) to show you the monster you helped turn me into by sending me to prison for all this time," and he threatened to "send death" her way. We conclude that the State established that Ward, by means of the letter, retaliated against Bruns with unlawful threats for discharging her duties in obtaining his convictions.

{¶ 29} Since Ward's assigned errors lack merit, they are overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Andrew T. French
Sean Brinkman
Hon. Michael Ward,
Visiting Judge