[Cite as *State v. Hornsby*, 2018-Ohio-1457.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2017-09-047 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 4/16/2018 |
| - vs - | | |
| | : | |
| MICHAEL JAMES HORNSBY, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2017 CR 000250

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, Ohio 45103, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Michael Hornsby, appeals the sentence he received in the Clermont County Court of Common Pleas following his guilty plea to domestic violence and felonious assault.

{¶ 2} This case involves three criminal cases. In Case No. 2016 CR 0595, appellant was indicted on one count of domestic violence, a felony of the third degree, arising from an incident that occurred on July 4, 2016 (the "2016 domestic violence"). In Case No. 2017

CR 0101, appellant was indicted on one count of domestic violence, a felony of the third degree, arising from an incident that occurred on January 21, 2017 (the "2017 domestic violence"). In Case No. 2017 CR 0250, appellant was indicted on one count of rape, a felony of the first degree, arising from an incident that occurred on January 21, 2017. The rape charge was accompanied by a repeat violent offender specification. In all three incidents, the victim was appellant's then girlfriend and the mother of his child.

{¶ 3} On August 2, 2017, appellant pled guilty to the 2016 domestic violence charge and the 2017 domestic violence charge. In Case No. 2017 CR 0250, appellant pled guilty to an amended charge of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree. The amendment did not change the date of the offense, January 21, 2017, or expand the time frame to which the charge referred. Before pleading guilty to the amended charge of felonious assault, appellant waived his right for the amended charge to be presented to a grand jury. Appellant further signed a waiver, voluntarily waiving the issuance of a new indictment.

{¶ 4} During the plea hearing, the state alleged and appellant agreed that the 2016 domestic violence incident involved his striking and hitting the victim while she held their child. The state further alleged and appellant agreed that the 2017 domestic violence incident involved his hitting and choking the victim on January 21, 2017, and that he had previously been convicted of two offenses of violence against family members, to wit, assault in 2014 and felonious assault in 2010. Regarding the 2017 felonious assault incident, the state alleged and appellant agreed that based upon the specific acts of physical violence appellant perpetrated on the victim on January 21, 2017, and other acts of physical violence he perpetrated on the victim prior to January 21, 2017, appellant caused the victim serious physical harm in the form of Post Traumatic Stress Disorder ("PTSD"), requiring significant and prolonged psychiatric treatment. The trial court accepted appellant's guilty

plea in all three cases.

{¶ 5} On August 17, 2017, the trial court held a sentencing hearing during which the victim and appellant's stepfather addressed the court. The stepfather stated that he watched appellant consistently engage in a pattern of abuse and that appellant always blames his behavior on anything other than himself. The victim described appellant as a very controlling and abusive man who abused her on many more occasions than she reported to the police. The victim described how, on January 21, 2017, appellant choked her so hard she could not talk or breathe, and forced her to have intercourse with him while he was abusing her. The victim stated that on January 21, 2017, appellant wanted her dead, and that she fears for her life if he gets out [of prison]. She further expressed her concern he will abuse someone else once he is released from prison.

{¶ 6} Prior to sentencing appellant, the trial court reiterated that appellant's 2017 domestic violence conviction was based solely upon his conduct on January 21, 2017, whereas his 2017 felonious assault conviction was based upon both his January 21, 2017 conduct and his ongoing pattern of abusive conduct toward the victim prior to January 21, 2017, which caused serious psychological harm to the victim. Noting that the 2017 domestic violence offense and the 2017 felonious assault offense involved separate animus and different types of harm, the trial court found that the two 2017 offenses were not allied offenses of similar import and therefore did not merge. Appellant's trial counsel agreed that the 2017 offenses did not merge.

{¶ 7} The trial court found appellant's conduct for all three offenses to be more serious than conduct normally constituting the offense because appellant's relationship with the victim facilitated the offenses, the offenses were committed in the presence of minors, and the harm caused to the victim was substantial. Given appellant's lengthy criminal record, the trial court found that recidivism was "virtually certain." The trial court further

found that appellant committed the 2016 domestic violence offense while on postrelease control for a 2010 felonious assault conviction, and that he committed the 2017 offenses while awaiting trial for his 2016 domestic violence offense.

{¶ 8} The trial court sentenced appellant to seven years in prison for his 2017 felonious assault conviction, and to 36 months in prison for each of his domestic violence convictions. The trial court ordered that appellant's prison terms for the 2017 offenses be served concurrently to each other but consecutively to appellant's prison term for his 2016 domestic violence conviction, for an aggregate prison term of ten years.

{¶ 9} Appellant now appeals, raising three assignments of error.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT'S SEVEN YEAR PRISON SENTENCE IS NOT COMMENSURATE WITH THE SERIOUSNESS OF APPELLANT'S JANUARY 21, 2017 CONDUCT.

{¶ 12} Appellant argues that his seven-year prison term for the 2017 felonious assault offense is excessive and not commensurate with his conduct because he "was not sentenced solely for his conduct on January 21, 2017, but also for unindicted conduct," that is, for other acts of physical violence he perpetrated on the victim prior to January 21, 2017. The state responds that felonious assault can cover multiple acts of physical violence over the years and cites *State v. Cooper*, 139 Ohio App.3d 149 (12th Dist.2000), in support.

{¶ 13} We review the imposed sentence under the standard of review set forth in R.C. 2953.08(G)(2), which governs all felony sentences. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Pursuant to that statute, an appellate court may modify or vacate a sentence only if the appellate court finds by clear and convincing evidence that "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* A sentence is not clearly and convincingly contrary to law

where the trial court considers the purposes and principles of sentencing as set forth in R.C. 2929.11, as well as the seriousness and recidivism factors listed in R.C. 2929.12, and sentences a defendant within the permissible statutory range. *State v. Robinson*, 12th Dist. Warren No. CA2016-06-051, 2017-Ohio-634, ¶ 16.

{¶ 14} Appellant pled guilty to felonious assault, in violation of R.C. 2903.11(A)(1), which provides that "[n]o person shall knowingly cause serious physical harm to another or to another's unborn." Serious physical harm to a person includes "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment." R.C. 2901.01(A)(5)(a). During the plea hearing, the state alleged that the 2017 felonious assault incident was based upon appellant's abusive conduct on January 21, 2017, as well as appellant's other abusive conduct toward the victim prior to January 21, 2017, which caused the victim to suffer from PTSD and undergo significant and prolonged psychiatric treatment.

{¶ 15} In *Cooper*, the defendant was charged with and convicted of four counts of felonious assault in violation of R.C. 2903.11(A)(1). Each of the four felonious assault charges was based upon the defendant's treatment of her four children over the course of each child's lifetime, causing each child mental illness. *Cooper*, 139 Ohio App.3d at 158. At trial, the state's approach was that the defendant's numerous acts, taken together, resulted in each child's mental illness, thus constituting a single count of felonious assault perpetrated on each child. *Id.* at 159. On appeal, the defendant argued that "the charges should have been dismissed because many instances of neglect over each child's lifetime may not constitute a single felonious assault, as the state charged." *Id.* at 158.

{¶ 16} We rejected the defendant's argument and held

> [W]e find that R.C. 2903.11(A)(1) does not mandate that a defendant perform a single act in order to commit the crime of felonious assault by causing a single injury in the form of mental illness.

- 5 -

> The statute's broad language requires only that a defendant knowingly cause serious physical harm. The means by which a perpetrator can cause such harm, by performing either a single act or a multitude of acts, is not specifically enumerated in this section of the statute. The legislature could have specifically required that a perpetrator commit a single act in order to commit felonious assault; however, the statute does not contain this requirement.

*Cooper*, 139 Ohio App.3d at 160. Upon reviewing the statute's legislative history, we found that the defendant's "convictions of felonious assault under these facts [was] the intended result," and that the defendant's "many acts and omissions against each of her children, causing each child's mental illness, may constitute the acts necessary for a single conviction of felonious assault." *Id.*

{¶ 17} Appellant's guilty plea to felonious assault was pursuant to an amendment of the original indictment alleging a rape offense. At the beginning of the plea hearing, the trial court discussed the amendment with appellant, but did not discuss that the amendment would include conduct predating the January 21, 2017 date of the offense alleged in the indictment.

{¶ 18} During the plea hearing, the state alleged that the 2017 felonious assault incident was based upon appellant's specific acts of physical violence perpetrated on the victim on January 21, 2017, as well as other acts of physical violence he perpetrated on the victim prior to January 21, 2017, which caused the victim to suffer from PTSD and undergo significant and prolonged psychiatric treatment. Upon inquiry from the trial court, appellant affirmed he understood the basic allegations supporting the 2017 felonious assault offense. Neither appellant nor his trial counsel objected to the factual basis of the 2017 felonious assault offense as outlined by the state. Appellant later indicated that he had no questions about the charges to which he was pleading guilty.

{¶ 19} After appellant entered his guilty plea to the 2017 felonious assault offense,

the trial court requested that the prosecutor formally state the factual basis for the offense. The prosecutor stated that

> [O]n or about January 21, 2017, * * * the Defendant knowingly caused serious physical harm to another[.] And that specifically – that specifically based upon the acts of physical violence that took place on January 21st, 2017, and those acts of physical violence that pre-dated that, all perpetrated by the Defendant, all upon [the victim], whom she had a child in common with the Defendant. Subsequent to the acts of physical violence, [the victim] has been diagnosed with Post Traumatic Stress Disorder. This Post Traumatic Stress Disorder is now indicted [sic] as a mental illness or condition. This mental illness or condition based [upon] those acts of physical violence has been prolonged and requires significant amounts of psychiatric treatment resulting in serious physical harm.

Upon the state's foregoing recitation, appellant's trial counsel immediately stated, "Nothing on those facts, your Honor." The trial court then specifically and separately asked both appellant and his trial counsel whether either one was disputing the facts supporting the 2017 felonious assault offense. Appellant replied, "No, your Honor." Likewise, his trial counsel replied, "No, your Honor." The trial court further inquired of appellant's trial counsel whether there was anything counsel wished to add. Trial counsel replied in the negative.

{¶ 20} Appellant makes much of the fact that the original 2017 rape indictment alleged the offense occurred on January 21, 2017, whereas the amendment did not change the date of the offense or expand the time frame to which the charge referred. However, failure to state the date of a crime will not render an indictment invalid or affect a trial, judgment, or other proceedings where the exact date of the offense is not an element of the offense which the state needs to prove. *State v. Sellards*, 17 Ohio St.3d 169, 171 (1985); *State v. Madden*, 15 Ohio App.3d 130 (12th Dist.1984). The date of a felonious assault is not an element of the offense. *See State v. Ferguson*, 2d Dist. Clark No. 08CA0050, 2011-Ohio-4285.

{¶ 21} When a trial court sentences a defendant, R.C. 2929.12(A) allows the court

to consider any other factors that are relevant to achieving the purposes and principles of sentencing set forth in R.C. 2929.11. In light of all of the foregoing, including the fact that appellant was convicted of felonious assault pursuant to a plea as opposed to a jury trial, agreed with the factual basis for the 2017 felonious assault offense, and did not object when presented with the opportunity to do so at the plea hearing, we find no error in the trial court's consideration and reliance upon appellant's abusive conduct predating January 21, 2017, in sentencing appellant to seven years in prison for the 2017 felonious assault conviction.

{¶ 22} Appellant's first assignment of error is overruled.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE TRIAL COURT'S SENTENCE PUNISHED APPELLANT TWICE FOR THE SAME CONDUCT.

{¶ 25} Appellant argues that his conviction and sentence for the 2017 felonious assault offense violates double jeopardy protections. Specifically, appellant asserts that because the 2017 felonious assault conviction is based in part on his ongoing pattern of abusive conduct toward the victim prior to January 21, 2017, and one of those acts of violence was the July 4, 2016 domestic violence offense, he is "being punished twice for his conduct on July 4, 2016," to wit, once on the 2016 domestic violence charge for the conduct itself, and once on the felonious assault charge for the same conduct to the extent it was part of an ongoing pattern of conduct against the victim.

{¶ 26} The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The Double Jeopardy Clause prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶

10. The present case involves the third double jeopardy prohibition: multiple punishments for the same offense. This third aspect of double jeopardy protection is codified in Ohio under R.C. 2941.25.

{¶ 27} R.C. 2941.25 codifies the double jeopardy protection for when multiple punishments can be imposed for offenses arising from the same conduct, as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 28} The Ohio Supreme Court has interpreted this statute differently over the years. Under the current caselaw, in determining whether offenses are allied offenses of similar import and should be merged for sentencing, "courts must evaluate three separate factors – the conduct, the animus, and the import." *Ruff*, 2015-Ohio-995 at paragraph one of the syllabus. Offenses do not merge and a defendant may be convicted and sentenced for multiple offenses if *any* of the following is true: (1) the defendant's conduct constitutes offenses of dissimilar import, (2) the defendant's conduct shows that the offenses were committed separately, or (3) the defendant's conduct shows that the offenses were committed with separate animus. *Id.* at paragraph three of the syllabus.

{¶ 29} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import." *Id.* at ¶ 26. "[A] defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and

identifiable from the harm of the other offense." *Id.* Thus, two or more offenses of dissimilar import exist "when the harm that results from each offense is separate and identifiable." *Id.* The burden lies with the defendant to establish his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act. *State v. Penwell*, 12th Dist. Fayette Nos. CA2016-12-020 and CA2016-12-021, 2017-Ohio-7465, ¶ 11. Whether offenses constitute allied offenses of similar import subject to merger under R.C. 2941.25 is a question of law that appellate courts review de novo. *Id.* at ¶ 9.

{¶ 30} We note that while appellant agreed the 2017 domestic violence offense and the 2017 felonious assault offense were not allied offenses at sentencing, he did not raise the issue regarding the 2016 domestic violence offense and the 2017 felonious assault offense. He has therefore "forfeit[ed] all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 3; *State v. Alhashimi*, 12th Dist. Warren Nos. CA2016-07-065 and CA2017-07-066, 2017-Ohio-7658, ¶ 44.

{¶ 31} The Eleventh Appellate District has considered whether a defendant's prior convictions may be relied upon in establishing the "pattern of conduct" element of his menacing by stalking charge without running afoul of the Double Jeopardy Clause. *State v. Werfel*, 11th Dist. Lake Nos. 2002-L-101 and 2002-L-102, 2003-Ohio-6958. Noting that the language of the menacing by stalking statute "clearly refers to prior convictions and their intended role in elevating the crime of menacing by stalking from a first degree misdemeanor to a fourth degree felony[,]" the court of appeals held that the defendant's "claim that the use of his past convictions constituted of double jeopardy is without merit." *Id.* at ¶ 25. *See also State v. Moissis*, 11th Dist. Lake No. 2000-L-187, 2002-Ohio-4955 (same and noting that the legislature has set forth similar "enhancement" statutes,

particularly regarding repeat OVI offenders).

{¶ 32} Cumulative punishments do not violate the Double Jeopardy Clause, provided the legislature clearly intended to permit such punishments. *Moissis* at ¶ 25. The language of the menacing by stalking statute clearly refers to prior convictions. The inclusion of the "pattern of conduct" element in the statute shows a clear legislative intent that past acts may be relied upon in establishing a "pattern of conduct" for which a defendant may be convicted and punished separately from the individual acts forming the "pattern of conduct."

{¶ 33} Unlike the menacing by stalking statute, the felonious assault statute does not include a "pattern of conduct" as an element of the offense. Thus, this raises the question of whether felonious assault may be based upon a "pattern of conduct" for which a defendant may be convicted and punished separately from the individual acts which form the "pattern of conduct." We have not found, and appellant has not cited, any case addressing this issue.

{¶ 34} In the context of sexual offenses, this court has consistently held that a defendant may be charged in a single count with an offense made up of multiple instances of the offense. *See State v. Bowling*, 12th Dist. Butler No. CA2014-01-017, 2015-Ohio-360; *State v. Birt*, 12th Dist. Butler No. CA2012-02-031, 2013-Ohio-1379; and *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289 (12th Dist.). In this regard then, there is no reason why felonious assault may not be based upon multiple instances of conduct, particularly where the serious physical harm element, in the form of a psychological injury, results from an accumulation of those acts.

{¶ 35} Unlike the cases involving sexual offenses, appellant's 2017 felonious assault offense was not a single count representing multiple instances of the offense itself occurring over a specific time frame. Rather, the 2017 felonious assault offense was a single count that was committed by multiple instances of conduct occurring over time. In this sense

- 11 -

then, the "pattern of conduct" is a separate act from each individual act forming the "pattern of conduct."

{¶ 36} Appellant asserts that because the 2016 domestic violence offense is an offense that predates the 2017 felonious assault offense, the 2016 domestic violence offense is necessarily included in the ongoing pattern of conduct supporting the felonious assault conviction, thus violating the Double Jeopardy Clause. However, the record does not indicate what prior acts of violence committed by appellant form the pattern of conduct supporting the 2017 felonious assault.

{¶ 37} At the plea hearing, the prosecutor stated that the 2017 felonious assault offense was not simply based upon the "numerous acts of physical violence" appellant perpetrated on the victim on January 21, 2017, but was based "upon these physical acts of violence as well as other physical acts of violence perpetrated on her pre-dating that particular date." The trial court reiterated this at sentencing. Appellant specifically agreed at the plea hearing that the foregoing facts constituted a pattern of abusive conduct toward the victim that supported the 2017 felonious assault offense. He did not object or raise the issue at sentencing.

{¶ 38} The state's reference to the "other physical acts of violence" in addition to "these acts of physical violence" plainly shows that there were physical acts of violence against the victim that resulted in her suffering from PTSD, beside the 2016 and 2017 domestic violence offenses. Indeed, at sentencing, the victim stated appellant had abused her on many more occasions than she reported to the police. Nevertheless, because the 2016 domestic violence offense was not specifically excluded from the prior acts of violence supporting the felonious assault conviction, we assume it was included.

{¶ 39} Assuming the conduct supporting the 2016 domestic violence offense was included in the ongoing pattern of conduct comprising the 2017 felonious assault offense,

we find that the offenses are not allied offenses of similar import subject to merger for purposes of sentencing under R.C. 2941.25(B) and *Ruff*. The felonious assault and domestic violence offenses were of dissimilar import because the harm that resulted from each offense was separate and identifiable. The harm caused by the 2016 domestic violence offense was the immediate physical harm that befell the victim on July 4, 2016. By contrast, the harm resulting from the ongoing pattern of abusive conduct constituting the felonious assault offense was the psychological harm suffered by the victim from an accumulation of repeated incidents of violence against her. As the Ohio Supreme Court stated, "a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Ruff*, 2015-Ohio-995 at ¶ 26.

{¶ 40} As stated above, it was appellant's burden to demonstrate that he was entitled to the protection of R.C. 2941.25. Had appellant established that, but for the 2016 domestic violence incident, the victim would not have sustained serious physical harm in the form of a psychological injury, we would agree with appellant's argument. However, the record supports the contrary conclusion that the victim's injury resulting from the felonious assault offense was not attributable to any specific act of violence, but from an accumulation of separate acts of violence. The immediate physical harm suffered by the victim from the 2016 domestic violence offense is different in nature from the psychological injury resulting from the numerous acts of violence comprising the 2017 felonious assault offense. Thus, the 2016 domestic violence offense and the 2017 felonious assault offense are of dissimilar import. *See State v. Dunn*, 4th Dist. Jackson No. 15CA1, 2017-Ohio-518 (rape and gross sexual imposition were offense of dissimilar import where the victim suffered separate and identifiable physical and psychological harms as a result of the defendant's crimes).

{¶ 41} In light of the foregoing, we find that appellant was properly convicted and

sentenced separately for both the 2016 domestic violence offense and the 2017 felonious assault offense.

{¶ 42} Appellant's second assignment of error is overruled.

{¶ 43} Assignment of Error No. 3:

{¶ 44} THE CONSECUTIVE STRUCTURE OF THE TRIAL COURT'S 10 YEAR SENTENCE IS DISPROPORTIONATE TO APPELLANT'S CONDUCT.

{¶ 45} Appellant argues that the trial court erred in imposing consecutive sentences because the consecutive sentences are excessive and disproportionate to appellant's conduct. Appellant further argues that the consecutive sentences are improper because he is being punished twice for his July 4, 2016 conduct, in that he was sentenced to 36 months in prison for that conduct in the 2016 domestic violence case, and to seven years in prison for that same conduct as part of the ongoing pattern of conduct in the 2017 felonious assault case. Given our holding under appellant's second assignment of error, we decline to further address appellant's second argument.

{¶ 46} Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *State v. Writesel*, 12th Dist. Madison No. CA2017-02-004, 2017-Ohio-8795, ¶ 13. Specifically, the trial court must find that (1) the consecutive sentence is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two

or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 47} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 37. While the trial court is not required to give reasons explaining these findings, it must be clear from the record that the court engaged in the required sentencing analysis and made the requisite findings. *Writesel* at ¶ 14. A consecutive sentence is contrary to law where the trial court fails to make the consecutive sentencing findings as required by R.C. 2929.14(C)(4). *State v. Marshall*, 12th Dist. Warren No. CA2013-05-042, 2013-Ohio-5092, ¶ 8.

{¶ 48} Appellant concedes, and the record shows, that the trial court made the requisite R.C. 2929.14(C)(4) findings during the sentencing hearing and in the sentencing entry for each of the cases when it imposed consecutive sentences for an aggregate ten-year prison term. The record further shows that the trial court properly considered the principles and purposes of R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12, and sentenced appellant within the permissible range for a second-degree felony and third-degree felonies in accordance with R.C. 2929.14(A).

{¶ 49} The record further supports the trial court's sentencing decision. During the sentencing hearing, the trial court noted that appellant's relationship with the victim facilitated the offenses, the offenses were committed in the presence of the parties' child and the victim's teenage child, and the harm caused to the victim was substantial. The trial court further noted that appellant committed the 2016 domestic violence offense while on

postrelease control for a 2010 felonious assault conviction, that he committed the 2017 offenses while awaiting trial for his 2016 domestic violence offense, and that while he was given several opportunities to rehabilitate himself over the years, he failed to do so.

{¶ 50} The trial court further detailed appellant's extensive criminal history which includes convictions for criminal damaging, vandalism, and resisting arrest, a 2006 disorderly conduct conviction amended from a domestic violence charge, a 2007 assault conviction, a 2010 felonious assault conviction, and a 2014 assault conviction amended from a domestic violence charge. The trial court noted that the 2006, 2007, and 2010 convictions involved a second female victim, appellant's then live-in girlfriend, and that the 2014 conviction involved a third female victim. The trial court further noted appellant's pattern of abusing women, the fact his abusive conduct is seemingly escalating in violence, and the fact he specifically targets women with whom he is in a relationship. As stated above, the victim described appellant's controlling and abusive behavior toward her, her fear for her life, and her concern he will abuse someone else once he is released from prison. The trial court found that recidivism was "virtually certain."

{¶ 51} In light of the foregoing, we find that the record supports the trial court's determination that imposing consecutive sentences is commensurate with the seriousness of appellant's conduct, necessary to punish appellant, and necessary to protect the public from future crime by appellant. Appellant's aggregate ten-year prison term is neither excessive nor disproportionate to his behavior.

{¶ 52} Appellant's third assignment of error is overruled.

{¶ 53} Judgment affirmed.

HENDRICKSON, P.J. and RINGLAND, J., concur.