[Cite as *State v. Conrad*, 2018-Ohio-5291.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2018-01-016 |
| Appellee, | : | O P I N I O N<br>12/28/2018 |
| | : | |
| - vs - | : | |
| | : | |
| TYLER M. CONRAD, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2016-11-1707

Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, OH 45011, for appellee

Engel & Martin, LLC, Mary K. Martin, 5181 Natorp Blvd., Suite 210, Mason, Ohio 45040, for appellant

**M. POWELL, J.**

{¶ 1} Appellant, Tyler Conrad, appeals from his convictions in the Butler County Court of Common Pleas for sexual imposition and contributing to the unruliness of a child. For the reasons discussed below, this court affirms Conrad's convictions.

{¶ 2} Conrad was a teacher at a public senior high school. The state alleged that Conrad – then 26 years old – had an inappropriate relationship with "S.," a 15-year-old

female student. The allegations involved several incidences of sexual activity occurring in and out of school.

{¶ 3} Following a police investigation, Conrad was indicted for two counts of sexual battery in violation of R.C. 2907.03(A)(7), third-degree felonies (hereinafter the sexual battery offenses). The sexual battery offenses were based upon two instances where Conrad allegedly digitally penetrated S. while she was alone with him in his classroom. Conrad was also indicted with one count of contributing to the unruliness of a child, a violation of R.C. 2919.24(A)(2) (2016), a first-degree misdemeanor, and sexual imposition, a violation of R.C. 2907.06(A)(4), a third-degree misdemeanor. These two charges related to an incident where Conrad secretly met with S. and took her to his friend's home in Ross Township, Butler County, Ohio (hereinafter "the Ross Twp. offenses"), where he allegedly rubbed S.'s vagina. Conrad entered not guilty pleas to the charges and the matter proceeded to a bench trial.

{¶ 4} S. testified that she was a sophomore student in Conrad's history class during the 2015 - 2016 school year. At Conrad's request, she began to work as his teacher's aide during a free study hall period. Conrad began to flirt with S. S. testified that Conrad would sometimes sit beside her and touch her legs or approach her from behind and lay his hands on her shoulders.

{¶ 5} As the close of the 2015 - 2016 school year approached, Conrad gave S. his cellular phone number and invited her to text message him "happy birthday" on his birthday. The two subsequently exchanged numerous text messages and calls over the summer of 2016 and into the next school year. S. did not tell her parents that she was communicating with Conrad in this manner and only told her friend, O.

{¶ 6} S. alleged that Conrad repeatedly requested that she meet with him out of school and offered to pick her up in his vehicle. On one occasion, S. and her friend, O,

were having a sleepover when Conrad called. S. put the call on the speaker phone setting. O. recognized Conrad's voice. Conrad was asking S. if they could meet. S. declined Conrad's invitation.

{¶ 7} On another occasion toward the end of the 2015 - 2016 school year, Conrad called S. and asked that she meet him by her neighborhood swimming pool. S. agreed. Because she believed her parents would not have permitted her to meet with Conrad, S. lied and told her parents that she was going to meet a friend. S. left her home and met Conrad at the arranged rendezvous location.

{¶ 8} Conrad drove S. to Conrad's friend's home in Ross Township ("the Ross home"). They went into the home, sat on the couch, and talked. Eventually, Conrad left the room, then returned and told S. to "come here." When S. responded, Conrad then began kissing her, lifted her up, carried her into a bedroom, and laid her down on the bed where he continued to kiss her. Conrad then proceeded to rub her vagina, initially outside the clothing, then underneath. When Conrad sensed that S. was uncomfortable, he stopped and left the room.

{¶ 9} S. returned to the couch. She and Conrad watched television for some time until S. announced that she should probably return home. Conrad dropped her off at a shopping center near her home. During her testimony, S. could not recall exactly when this incident occurred other than during the summer of 2016. O. testified that S. called her and told her what happened shortly after it occurred and while O. was on vacation in Tennessee around Memorial Day 2016.

{¶ 10} The state submitted evidence of cellular phone communications between Conrad and S. from May 6, 2016 to October 9, 2016. During this time, Conrad and S. exchanged 2,876 text messages and 73 calls. Conrad initiated most of the text messages and calls. Many of these communications occurred outside of school hours, late at night

and into the early morning hours.

{¶ 11} Conrad and S. continued communicating and interacting with one another into S.'s junior year. Security camera videotapes capturing the hallway outside of Conrad's classroom were admitted at trial and depicted S. walking into Conrad's classroom repeatedly at a time when Conrad was not teaching a class. Comparing the cellular phone records with the timestamp on the security videotapes indicated that that the two were exchanging text messages contemporaneously with S. visiting with Conrad in his empty classroom. S. testified that during one of these visits to Conrad's classroom, Conrad touched her vagina on the outside of her leggings and on another occasion, he put his hand inside her spandex shorts and digitally penetrated her vagina.

{¶ 12} S. testified that she was attending a religious youth camp and heard a sermon which convinced her that what she had been doing with Conrad was wrong and that it had to stop. On October 9, 2016, she told a religious youth leader about her relationship with Conrad. The youth leader in turn called child protective services. Police then began an investigation.

{¶ 13} Police conducted several interviews with S., who was reluctant to cooperate. In the initial round of interviews, S. denied that any sexual activity took place at the school. She later admitted that sexual activity occurred at the school, and that digital penetration had occurred on more than one occasion. S. led police to the Ross home. Coincidentally, as they drove by the Ross home, Conrad was standing in the driveway.

{¶ 14} Police interviewed Conrad. He admitted a "good relationship" with S. and conceded that they had been in communication. However, Conrad denied any inappropriate relationship or that any sexual activity occurred. Police confiscated Conrad's phone and later downloaded its contents. The content of the text communications between Conrad and S. had been erased.

{¶ 15} Similarly, at Conrad's direction, S. had erased from her cellular phone all the text messages exchanged with Conrad. S. explained that Conrad had once observed his name on her cellular phone and had taken the phone from her and deleted all their conversations. Conrad warned S. to delete any future communications.

{¶ 16} The state introduced testimony from S.'s mother, who testified concerning the rules and discipline in S.'s household. The investigating detective testified and authenticated the videotape of Conrad's police interview, which was subsequently introduced into evidence. During Conrad's counsel's cross-examination of the investigating detective, cellular phone records suggesting that Conrad was in Florida around Memorial Day 2016 were identified and later admitted as evidence.

{¶ 17} At the close of the state's evidence, Conrad moved for acquittal pursuant to Crim.R. 29. The court granted the motion with respect to one of the sexual battery counts, as S. had not testified that penetration occurred on one of the two alleged incidents in Conrad's classroom.

{¶ 18} During his defense case, Conrad presented the testimony of his friend who owned the Ross home. The friend denied that Conrad had a key to access his home during the time frame of the offenses alleged to have occurred there.

{¶ 19} In a written decision, the trial court acquitted Conrad of the remaining sexual battery count. The court noted the inconsistencies in S.'s trial testimony and her initial statements to the police where she denied that any sexual activity occurred in Conrad's classroom and wavered on whether penetration occurred. However, the court found Conrad guilty of the Ross Twp. offenses, specifically noting that it found that Conrad was dishonest during his police interview and that O. provided credible corroborating testimony.

{¶ 20} Following the verdict, Conrad moved for a new trial on the basis that the state knew but failed to disclose a narrower date range for the commission of the Ross Twp.

offenses. Conrad argued that if had he known this narrower date range, i.e., around Memorial Day 2016, he could have better prepared his alibi defense for trial. Conrad attached the affidavits of the persons who were in Florida with Conrad around Memorial Day 2016.

{¶ 21} Conrad appeals, assigning five errors for this court's review.[1]

{¶ 22} Assignment of Error No. 1:

{¶ 23} APPELLANT WAS DENIED A FAIR TRIAL AND WAS DENIED DUE PROCESS DUE TO THE STATE'S FAILURE TO PROVIDE A MORE SPECIFIC DATE OF OFFENSE.

{¶ 24} Conrad argues that the state deprived him of a fair trial when it did not provide him with a narrowed date range for the Ross Twp. offenses before trial. Conrad contends that this prejudiced him because he could not prepare his alibi defense.

{¶ 25} The state's original indictments alleged that the Ross Twp. offenses occurred sometime between May 8, 2016 and August 15, 2016. On the morning of the first day of the trial, the state moved to amend the indictments to narrow the potential offense dates to between May 24 and August 1, 2016.

{¶ 26} Following O.'s testimony, in which she testified that S. told her about the incident around Memorial Day 2016, Conrad's counsel questioned whether the state was obligated to amend the bill of particulars to further narrow the dates of the Ross Twp. offenses. The parties and court conferred, and it was agreed that the state would amend the indictments to narrow the offense dates to between May 26, 2016 and June 2, 2016. The parties further agreed that Conrad could file a written notice of alibi, which would provide that Conrad left the state of Ohio for Florida on May 27, 2016 and returned to Ohio

---

1. Conrad appeals from the verdict only. The motion for a new trial remains unresolved by the trial court pending this appeal.

on June 5, 2016.

{¶ 27} During cross-examination of the investigating detective, Conrad introduced evidence that he was on a Florida vacation on Memorial Day 2016, i.e., May 30, 2016. Specifically, Conrad introduced Florida vacation photographs that indicated, by digital date-stamp, that the photographs were taken between May 30, 2016 and June 4, 2016.

{¶ 28} Conrad contends that if the state had had provided him with the narrowed offense dates prior to trial he could have prepared a stronger alibi defense. Although not part of the trial record, Conrad references his new trial motion affidavits by persons who vacationed with Conrad, including the affidavit of Conrad's girlfriend, who averred that she travelled with Conrad to and from Florida between May 27, 2016 and June 5, 2016.

{¶ 29} "[T]he Ohio Constitution guarantees an accused that the essential facts constituting the offense for which he is tried will be found in the indictment by the grand jury." *State v. Jackson*, 134 Ohio St.3d 184, 2012-Ohio-5561, ¶ 12. "An indictment meets constitutional requirements if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *State v. Mielke*, 12th Dist. Warren No. CA2012-08-079, 2013-Ohio-1612, ¶ 30, quoting *Jackson* at ¶ 13.

{¶ 30} The failure to state the date of a crime will not render an indictment invalid or affect a trial, judgment, or other proceedings where the exact date of the offense is not an element of the offense which the state needs to prove. *State v. Hornsby*, 12th Dist. Clermont No. CA2017-09-047, 2018-Ohio-1457, ¶ 20, citing *State v. Sellards*, 17 Ohio St.3d 169, 171 (1985); *State v. Madden*, 15 Ohio App.3d 130 (12th Dist.1984). Neither sexual imposition nor contributing to the unruliness of a child required the state the prove the exact date of the offense. Moreover, the filing of an alibi defense "does not alter the rule that in a

- 7 -

criminal case the exact date and time of the offense are immaterial unless the nature of the offense is such that exactness of time is essential." *State v. Sprauer*, 12th Dist. Warren No. CA2005-02-022, 2006-Ohio-1146, ¶ 10, quoting *State v. Dingus*, 26 Ohio App.2d 131 (4th Dist.1970), paragraph five of the syllabus.

{¶ 31} Upon review, this court does not find that the state denied Conrad a fair trial or that he suffered prejudice as result the time frame for the Ross Twp. offenses alleged in the indictment or bill of particulars at the commencement of his trial. At Conrad's request, the indictment was amended after O.'s trial testimony. The amended time frame was within the original date range alleged in the indictment, thus the amendment did not present an entirely new time frame. Consequently, Conrad was aware that he could present an alibi defense for a portion of the original time frame.

{¶ 32} In addition, the record indicates that the state provided Conrad with O.'s video-recorded police interview wherein she stated that S. called her and told her about the incident at approximately the beginning of June 2016. Thus, Conrad had additional notice that the alleged offenses occurred around the time when he was out of the state.

{¶ 33} Nonetheless, Conrad presented his alibi defense at trial via the cellular phone records introduced into evidence. The trial court obviously considered Conrad's alibi defense, finding in its written decision that the phone records established that Conrad was in Florida between May 30 and June 4, 2016. The court also noted that Conrad's cellular phone record displayed numerous communications between Conrad and S. on May 26 and May 27, 2016, which abruptly ended thereafter and did not resume until June 2. Based upon the foregoing, the court found that it was reasonable to assume that Conrad committed the Ross Twp. offenses on May 26 or 27 and then left for Florida shortly after.

{¶ 34} Finally, the record does not support the conclusion that Conrad could have presented a "stronger" alibi defense had he been given the narrower date range at an earlier

time. The affidavit of Conrad's girlfriend only avers that she travelled with him beginning on May 27. Thus, the affidavit would not preclude the court from finding that Conrad committed the offense either on May 26 or on May 27 before leaving for vacation. Accordingly, this court finds that Conrad was not deprived of a fair trial and overrules Conrad's first assignment of error.

{¶ 35} Assignment of Error No. 2:

{¶ 36} APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 37} Conrad contends, in the alternative, that if this court finds he was not deprived of a fair trial for the reasons set forth in the prior assignment of error, that he received constitutionally deficient performance when his trial counsel did not seek a continuance to better establish his alibi defense. Conrad argues that he could have secured trial testimony from the witnesses who provided him with affidavits in his motion for a new trial.

{¶ 38} Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14. As a result, to prevail on an ineffective assistance of counsel claim, Conrad must demonstrate (1) his trial counsel's performance fell below an objective standard of reasonableness, and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984); *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7. The failure to make an adequate showing on either prong is fatal to an ineffective assistance of counsel claim. *State v. Zielinski*, 12th Dist. Warren No. CA2010-12-121, 2011-Ohio-6535, ¶ 50.

{¶ 39} For the reasons set forth in the first assignment of error, Conrad cannot demonstrate prejudice. Conrad's alibi defense was presented at trial and did not establish his innocence. The additional witnesses, including the girlfriend, did not provide an alibi for

the time that the court found that Conrad committed the Ross Twp. offenses, i.e., either May 26 or May 27, 2016. This court overrules Conrad's second assignment of error.

{¶ 40} Assignment of Error No. 3:

{¶ 41} THE TRIAL COURT ERRED IN DENYING [THE MOTION] TO MERGE APPELLANT'S OFFENSES.

{¶ 42} Conrad argues that the court erred in failing to merge the Ross Twp. offenses for purposes of sentencing because they were allied offenses of similar import. Conrad argues that the acts of meeting the victim, transporting her to the house, the sexual contact, and transporting her back to her neighborhood, were a single continuous and uninterrupted event with one victim resulting in a single harm.

{¶ 43} Pursuant to R.C. 2941.25, Ohio's allied-offenses statute, the imposition of multiple punishments for the same criminal conduct is prohibited. *State v. Rodriguez*, 12th Dist. Butler No. CA2015-02-024, 2016-Ohio-452, ¶ 23. If any of the following occurs, the defendant may be convicted and sentenced for multiple offenses: "(1) the offenses are dissimilar in import or significance — in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 25. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 26.

{¶ 44} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. An appellate court applies a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28. "The defendant bears the burden of establishing his entitlement to the protection provided by

R.C. 2941.25 against multiple punishments for a single criminal act." *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 14.

{¶ 45} Conrad's sexual imposition conviction was premised on a violation of R.C. 2907.06(A)(4), which provides in pertinent part: "[n]o person shall have sexual contact with another * * * when * * * [t]he other person * * * is thirteen years of age or older but less than sixteen years of age * * *."

{¶ 46} Conrad's contributing to the unruliness of a child conviction was based on a violation of R.C. 2919.24(A)(2) (2016), which provided in relevant part: "[n]o person * * * shall * * * [a]ct in a way tending to cause a child or a ward of the juvenile court to become an unruly child * * *." An "unruly child" includes "[a]ny child who does not submit to the reasonable control of the child's parents * * * by reason of being wayward or habitually disobedient; * * *" and " * * * *[a]ny child who behaves in a manner as to injure or endanger the child's own health or morals or the health or morals of others." R.C. 2151.022 (A) and (C).

{¶ 47} The evidence presented at trial demonstrated that Conrad engaged in a pattern of grooming S. to engage in a sexual relationship with him. This included his flirtatious behavior, extensive covert communication, and multiple invitations to meet him for reasons unrelated to school. The contributing offense involved just such an invitation where S. secretly agreed to meet Conrad and then lied to her parents, telling them she was going to meet with a friend. Conrad understood that he was contributing to S.'s unruliness because he did not pick her up or drop her off at her home, but rather at a location where S.'s parents would be unaware of their actions.

{¶ 48} Thus, in surreptitiously arranging to meet and transport S. to the Ross home, Conrad undermined the rules and discipline of S.'s parents, i.e., tended to cause her to not submit to the reasonable control of her parents by reason of being wayward and to act in a

manner injurious to S.'s own health or morals. This harm was dissimilar in import to the harm resulting from an adult having sexual contact with a child. This court overrules Conrad's third assignment of error.

{¶ 49} Assignment of Error No 4:

{¶ 50} THE CONVICTIONS IN THIS MATTER WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 51} Assignment of Error No. 5:

{¶ 52} THE CONVICTIONS IN THIS MATTER WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 53} Conrad argues that the state failed to submit sufficient evidence to support the Ross Twp. offenses and that those convictions were also against the manifest weight of the evidence. The concept of legal sufficiency of the evidence refers to whether the conviction can be supported as a matter of law. *State v. Everitt*, 12th Dist. Warren No. CA2002-07-070, 2003-Ohio-2554, ¶ 10. In reviewing the sufficiency of the evidence, an appellate court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact would have found all the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 54} To determine whether a conviction is against the manifest weight of the evidence, a reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial

ordered. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 17. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 18.

{¶ 55} With respect to the sexual imposition offense, Conrad contends that there was no corroborating evidence admitted at trial. Pursuant to R.C. 2907.06(B), "[n]o person shall be convicted of a violation of [sexual imposition] solely upon the victim's testimony unsupported by other evidence." The Ohio Supreme Court has examined the corroboration requirement of R.C. 2907.06(B) and held that the statute "does not mandate proof of the facts which are the very substance of the crime charged * * *." *State v. Economo*, 76 Ohio St.3d 56, 59 (1996). Further, the Court found that the corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. *Id.* at 60. Slight circumstances or evidence that tends to support the victim's testimony is satisfactory. *Id.*

{¶ 56} Conrad argues that the only corroborative evidence was O.'s testimony, which was derived from hearsay statements made by S. to O. Upon review, this court finds that the record contains sufficient corroborating evidence to support the sexual imposition charge. Conrad engaged in secret communications with S. for over five months, repeatedly attempting to lure her away with him. O. heard one of these attempts when S. put Conrad on speaker phone during a sleepover. S. was able to lead police to the Ross home and police independently verified her description of the exterior and interior floor plan of the house. S.'s account of the text message and phone calls arranging the meeting to travel to the Ross home was also verified by the cellular phone records entered into evidence. Finally, S. reported the alleged offense to O. shortly after it occurred. Consequently, the record contains corroborating evidence necessary to satisfy the requirement under R.C.

2907.06(B).

{¶ 57} Regarding the weight of the evidence, Conrad argues that the court lost its way in finding S. unreliable on the sexual battery count but credible as to the Ross Twp. offenses. The trial court, in acquitting Conrad of the sexual battery charge, noted its concerns with inconsistencies in S.'s statements to police and the possibly suggestive interviewing method used by the police. For those reasons, the court concluded that the state had not met its burden of proof with respect to the sexual battery count. However, the trial court sitting as factfinder is free to believe all, some, or none of the testimony presented. *State v. Erickson*, 12th Dist. Warren No. CA2014-10-131, 2015-Ohio-2086, ¶ 42. Here, the court did not have the same concerns with respect to the sexual imposition offense and the weight of the evidence supports its determination. The trial court is in a better position that this court to gauge witness credibility and there is nothing in the record that would make this court question the verdict. As discussed above, there was substantial evidence corroborating the victim's claims as to the sexual imposition charge.

{¶ 58} With regard to the contributing to the unruliness of a child charge, Conrad argues that the state failed to put on evidence that S. was being unruly, i.e., that there was no evidence that she understood she was breaking rules, that she did not lie to her parents, and that there was no evidence that Conrad knew he was breaking S.'s parents' rules. This argument is meritless. S.'s mother testified that S. would not have been allowed to spend time alone, out of school, with an adult male teacher. S. testified that she lied to her parents to meet with Conrad. Conrad acknowledged the wrongfulness of his conduct by arranging to meet S. in places that would prevent S.'s parents from learning about their inappropriate relationship. Conrad's conviction for contributing to the unruliness of a child is supported by sufficient evidence and the greater weight of the evidence.

{¶ 59} Based on the foregoing, Conrad's convictions for the Ross Twp. offenses

were supported sufficient credible evidence and the court did not lose its way in finding Conrad guilty. This court overrules Conrad's fourth and fifth assignments of error.

{¶ 60} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.